RICH, Admr., Appellant,

v.

ERIE COUNTY DEPARTMENT OF HUMAN RESOURCES, Appellee, et al.*

[Cite as *Rich v. Erie Cty. Dept. of Human Resources* (1995), 106 Ohio App.3d 88.]

Court of Appeals of Ohio,
Sixth District, Erie County.

No. E–95–002.

Decided Aug. 25, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1996), 74 Ohio St.3d 1498, 659 N.E.2d 314.

*George Oryshkewych* and *Gary Smith,* for appellant.

*Joan Szuberla,* for appellee.

GREY, Judge.

This is an appeal from the Erie County Court of Common Pleas. Michael Wasserman, age three, was the victim of child abuse. His mother was Peggy Wasserman, and the suspected abuser was Craig Popke, her live-in companion. The child's paternal grandfather and maternal grandmother reported the matter to Erie County Department of Human Services on August 23, 1989, and a hospital examination found extensive bruising. Michael was removed from his mother's custody and placed with the paternal grandfather, Willard Rich.

The mother and Popke were directed to attend parenting classes at the Firelands Community Hospital. She attended seven of the eight scheduled classes, but Popke attended only two. On December 18, 1989, Michael was returned to the home of his mother and Popke. On January 20, 1990, Michael died of burns inflicted by Popke by immersing him in a tub of scalding water.

Willard Rich was appointed administrator of the estate of Michael Wasserman and in 1992 instituted an action against the Department of Human Services, Erie County Commissioners Vaith, Scheid, and Ferrel, the Firelands Community Hospital, and several John Does. That action was voluntarily dismissed, and a

new action, the one presently before this court, was filed. The original defendants were named in this second action, but it also included as defendants Department of Human Services social workers Lazano and Stepanic, and Whaley, the parenting class instructor at Firelands. While the original action sounded basically in negligence and wrongful death, the refiled action also included a claim under Section 1983, Title 42, U.S.Code.

The trial court granted a motion to dismiss in favor of the county defendants on the basis of Ohio's sovereign immunity law, R.C. Chapter 2744. In a subsequent entry in response to plaintiff's motion, the court specifically found that plaintiff's Section 1983 claim was barred under the holding in *DeShaney v. Winnebago Cty. Dept. of Social Serv.* (1989), 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249.

Both entries were appealed, the appeals were consolidated, and plaintiff now asserts one claim of error.

"ASSIGNMENT OF ERROR 1

"The trial court erred to the prejudice of Appellant in granting the Motion to Dismiss in favor of Appellee Erie County Department of Human Services, Alvin Vaith, William P. Scheid, Thomas M. Ferrel, Steve Lazano, and Jane Stepanic."

■ The standard of review for a judgment granting a Civ.R. 12(B)(6) motion requires that the reviewing court must independently review the complaint to determine if dismissal was appropriate. A reviewing court need not defer to the trial court's decision in Civ.R. 12(B)(6) cases.

■ In order for a court to dismiss a complaint for failure to state a claim upon which relief may be granted, it must appear beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 144, 573 N.E.2d 1063, 1064–1065; *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 245, 71 O.O.2d 223, 224–225, 327 N.E.2d 753, 754–755. In construing a complaint upon a motion to dismiss for failure to state a claim, we must presume all factual allegations of the complaint are true and make all reasonable inferences in favor of the nonmoving party. *York, supra.*

■ While immunity is an affirmative defense, where the complaint itself bears conclusive evidence that the action is barred by the defense, a Civ.R. 12(B)(6) dismissal is proper. See, *e.g., Goad v. Cuyahoga Cty. Bd. of Commrs.* (1992), 79 Ohio App.3d 521, 523, 607 N.E.2d 878, 879–880 (sovereign immunity); *Esselburne v. Ohio Dept. of Agriculture* (1990), 64 Ohio App.3d 578, 580, 582 N.E.2d 48, 49–50.

Appellant makes two arguments in support of this assignment of error, one asserting a Section 1983 claim and the other under Ohio law. We will treat the federal claim first.

■■ The decision of the United States Supreme Court in *DeShaney v. Winnebago Cty. Dept. of Social Serv., supra,* is dispositive as to appellant's federal claim. The court held that where the state itself does not deprive a person of individual rights, the Due Process Clause could not be extended to ·impose an affirmative duty to ensure those rights never came to harm. This was the very same position taken by the Ohio Supreme Court on pursuing a Section 1983 claim in an Ohio court. To establish a Section 1983 claim, two elements are required. First, the conduct in controversy must be committed by a person acting under color of state law, and second, the conduct must deprive the plaintiff of rights of the United States Constitution. *Shirokey v. Marth* (1992), 63 Ohio St.3d 113, 116, 585 N.E.2d 407, 410; *1946 St. Clair Corp. v. Cleveland* (1990), 49 Ohio St.3d 33, 34, 550 N.E.2d 456, 458–459. Taking the averments in the complaint as true, it does not establish a federal due process or equal protection claim under the standard set out in *DeShaney* and *Shirokey, supra.*

■■ Turning now to the state claim, the United States Supreme Court in *DeShaney* noted that when a state voluntarily undertakes to protect neglected children from harm, it may also acquire a duty under state tort law to provide the child with adequate protection and may be liable for doing so in a negligent fashion. The Ohio Supreme Court cited *DeShaney* and appears to be following it to some extent in its decision in *Brodie v. Summit Cty. Children Serv. Bd.* (1990), 51 Ohio St.3d 112, 554 N.E.2d 1301. The syllabus of *Brodie* states:

"1. Officers or agents of a children services bureau are immune from civil liability for the exercise of discretionary functions unless a plaintiff challenging the public officer's good faith can show that the official acted in willful, reckless or wanton disregard of rights established under law.

"2. A children services board and its agents have a duty to investigate and report their findings as required by R.C. 2151.421 when a specific child is identified as abused or neglected, and the public duty doctrine may not be raised as a defense for agency failure to comply with such statutory requirements.

"3. Qualified immunity may not be asserted as a defense to an action alleging the failure of a public official to perform ministerial acts. (*Scot Lad Foods, Inc. v. Secy. of State* [1981], 66 Ohio St.2d 1, 20 O.O.3d 1, 418 N.E.2d 1368, followed.)

"4. Division (G) of R.C. 2151.421 does not confer immunity upon those who fail to carry out the mandate of the statute."

Appellant relies on *Brodie,* and as it was applied in *Crago v. Lorain Cty. Commrs.* (1990), 69 Ohio App.3d 24, 590 N.E.2d 15. Appellee relies on the more recent holding in *Wilson v. Stark Cty. Dept. of Human Serv.* (1994), 70 Ohio St.3d 450, 639 N.E.2d 105, emphasizing that *Wilson* was decided after the adoption of R.C. Chapter 2744. The syllabus in *Wilson* provides:

"1. 'Employee,' as defined in R.C. 2744.01(B), does not include a county department of human services.

"2. Where a county is immune under R.C. 2744.02 in its operation of a county department of human services, that immunity extends to the department of human services itself."

Appellee would have us construe *Wilson* as holding that counties and their departments of human services are absolutely immune from liability for any conduct, no matter how negligent, which results in injury to the children under their custody. We cannot give *Wilson* such a broad construction. The issue in the case was really quite narrow, *i.e.,* the status of the department.

The issue before the court in *Wilson* was whether the immunity from civil liability conferred upon a county by R.C. Chapter 2744 extended to the county's human services department. The court answered that question in the affirmative, but specifically pointed out that the issues of due process and constitutionality of the provisions of R.C. Chapter 2744 were not involved in the case.

While *Wilson* is quite narrow, *Brodie, supra,* speaks to the obligation of protective services agencies to carry out statutory obligations to protect children. It finds a specific legislative intent that "children services agencies take responsibility for investigating and proceeding with appropriate action to prevent further child abuse or neglect * * *." *Id.,* 51 Ohio St.3d at 119, 554 N.E.2d at 1308. It draws a distinction between ministerial and discretionary duties, and between absolute and qualified immunity. Using *Brodie* as authority, however, may be questionable since, as was pointed out in *Crago, supra, Brodie* arose out of facts which preceded the enactment of R.C. Chapter 2744.

Nonetheless, we are convinced that the concerns of the Supreme Court and the legislature that abused and neglected children be protected from further harm are as strong as ever, and that the adoption of R.C. Chapter 2744 was not intended to create a blanket immunity for harm done to these children. We believe it is appropriate to apply the *Brodie* standard in this case.

Even after applying the *Brodie* standard, however, we find that the trial court did not err in dismissing appellant's case. In *Brodie, supra,* as in *DeShaney, supra,* there was a complete failure of the agency to investigate or to take any corrective or protective actions. In this case, the department of human services did investigate and did remove the child from the abusive home. The

department sought to ameliorate the problem by requiring parenting classes. To be sure, taking the allegations in the complaint to be true, not every procedural step was taken, but many of these are clearly discretionary. For example, appellant states that no complaint was filed under R.C. 2151.27, but the filing of a complaint is almost always a discretionary decision based on a consideration of what evidence is available to prove the charges in the complaint. *Brodie, supra,* emphasizes the distinction between ministerial and discretionary acts.

There were other allegations, such as failure to obtain a temporary order under R.C. 2151.31, an *ex parte* order under R.C. 5103.15, or a case plan under R.C. 5103.15(A)(2). All of these are essentially paperwork violations, and significantly, the complaint does not allege any facts to claim that these violations were the proximate cause of the injury here. We would note parenthetically that these long and elaborate statutes mandate various and sometimes conflicting procedures. For example, they mandate the removal of an endangered child, but also mandate that there be reunification of the family. This is not to say that the agencies may ignore the clear mandates of the statutes, but rather that the statutes do allow for a considerable breadth in the agency's discretion, *i.e.,* to treat some cases as criminal matters involving sanctions and to treat other cases as social matters amenable to social services intervention.

In this case, the department of human services made a decision to return the child to his mother. Such decisions are always fraught with peril since they attempt to predict human behavior. In hindsight, we see this decision was a mistake, a terrible, tragic mistake. However, assuming all the facts in the complaint to be true, and construing them most favorably toward appellant, we find that appellant can prove no facts that would show a failure to investigate or a reckless and wanton disregard for the rights of this unfortunate child.

Based on the foregoing, Assignment of Error No. 1 is not well taken and is overruled. The judgment of the trial court is affirmed. Court costs assessed to appellant.

*Judgment affirmed.*

Glasser and Sherck, JJ., concur.

Lawrence Grey, J., retired, of the Fourth Appellate District, sitting by assignment.