OPINION
In this case, Carl Campbell, Sharon Campbell, and Amber Campbell appeal from a summary judgment awarded to Defendants/Appellees, Debra Mallonee, Steve Clifton, and Board of Education, Fairborn City Schools (Board). The Campbells' complaint against Mallonee, Clifton, and the Board arose from Amber Campbell's participation in a peer mediation program at Baker Junior High School during the 1995-96 school year. The mediation program was created and administered by Debra Mallonee, who was a seventh grade language arts teacher employed by the Board. At the time of Amber's mediation, Mallonee was on sabbatical leave while pursing a degree at Ohio State University. However, during her sabbatical, Mallonee continued to conduct the mediation program. She was not paid for this, but instead administered the program on a voluntary basis.
Amber's mediation took place on March 25, 1996, and was conducted by four students, with Mallonee observing. The basis of the dispute was Amber's alleged interference in a relationship between Amanda (Adkins) Murphy and Amanda's boyfriend, Chris. At the end of the mediation, Amber agreed to leave Amanda's boyfriend alone. Two days later, however, Amanda approached Mallonee and asked to discuss the situation further with Amber. As a result, Mallonee met with the two girls at school that day. This was not a formal mediation session, but was an informal conversation. Factual disputes exist about what exactly took place during the meeting. Amber claimed she told Mallonee about advances that had been made by David Burton, who was a friend of the Campbell family. Allegedly, Amber told Mallonee that Burton had hugged her on several occasions and that she was uncomfortable around him. She also mentioned an incident in which Burton had touched her breast and crotch area. And finally, she mentioned another incident in which Burton had her sit between his legs while sledding. According to Amber, Mallonee did not listen to her. In an attempt to get Mallonee's attention, Amber told Mallonee an untrue story about having unprotected sex with a brother's friend. In response, Mallonee told Amber that she should talk to her mother about what happened. Mallonee also gave Amber a suicide hot-line number and told her to call if she had a problem. Purportedly, Mallonee was in a hurry to get to her class at Ohio State.
By contrast, Mallonee testified that the issue of Amber's unprotected sex with a friend's brother came up first in the conversation. Mallonee was concerned and counseled Amber about problems that could arise. According to Mallonee, Amber then mentioned problems with Burton as an attempt to avoid discussing the sex issue. Mallonee also testified that Amber said only that Burton had tried to "touch" her and had only tried to kiss her. Mallonee did not suspect that abuse was occurring and did not report the matter to anyone.
At some point after the informal mediation session, Amber told her parents (Carl and Sharon Campbell) about the situation with Burton. Amber's parents complained to the school about the fact that the alleged abuse had not been reported. Amber and her parents then filed suit against Burton, Mallonee, Clifton (the Superintendent of Fairborn Schools), and the Board, alleging that they had suffered humiliation and mental anguish as a result of Mallonee's failure to report Burton's abuse, as required by R.C.2151.421.
The trial court's grant of summary judgment was based on the immunity of Mallonee, Clifton, and the Board. Specifically, the court found the mediation program an immune governmental activity to which no exceptions to immunity applied. In particular, the court concluded that R.C. 2151.421 did not expressly impose liability for purposes of the immunity exception in R.C.2744.02(B)(5). Additionally, the court decided that Mallonee and Clifton were immune from individual liability under R.C.2744.03(A)(6). The Campbells now appeal, raising the following assignments of error:
 I. The trial court erred in granting summary judgment in favor of Defendant Mallonee where the express liability imposed by statute creates an exception to the sovereign immunity doctrine.
 II. The court erred in concluding that Defendant Clifton is immune from liability.
 III. The trial court erred in granting summary judgment to Fairborn City Schools Board of Education by concluding that Defendant Mallonee's functions were governmental instead of proprietary.
 IV. The trial court erred in concluding that the Board of Education is not liable insofar as a failure to perform a mandatory duty creates express liability.
After considering the assignments of error, we find them without merit and affirm the judgment of the trial court. A brief explanation of our decision follows.
 I
In the first assignment of error, the Campbells contend that R.C. 2151.421 expressly imposes liability on Debra Mallonee for her failure to report Burton's abuse and makes Mallonee individually liable for the Campbells' injuries under the immunity exception found in R.C. 2744.03(A)(6). At the time of the incident, R.C. 2744.03 provided in pertinent part that:
 (A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
* * *
 (6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
 (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
 (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
 (c) Liability is expressly imposed upon the employee by a section of the Revised Code.
The Campbells concede that the first two subsections of R.C.2744.03(A)(6) do not apply. However, they claim, relying on Brodiev. Summit Cty. Children Serv. Bd. (1990), 51 Ohio St.3d 112, that R.C. 2151.421 expressly imposes liability for purposes of the immunity exception in R.C. 2744.03(A)(6)(c). In this regard, R.C.2151.421 states that:
 (A)(1)(a) No person described in division (A)(1)(b) of this section who is acting in an official or professional capacity and knows or suspects that a child * * has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child, shall fail to immediately report that knowledge or suspicion to the public children services agency or a municipal or county peace officer in the county in which the child resides or in which the abuse or neglect is occurring or has occurred.
In Brodie, a guardian ad litem brought suit against the Children Services Board and its employees for negligently failing or refusing to investigate reports of child abuse. However, the trial court granted summary judgment to the Board and its employees, based on their immunity from suit under R.C.2151.421(G) and their "good faith" immunity. The court of appeals reversed, finding that R.C. 2151.421(G) conferred immunity for making reports or participating in judicial proceedings, but not for failing to make reports or to implement judicial orders. Id. at 114. The court of appeals also found that the defendants had failed to establish their claim that they were entitled to good faith immunity. Additionally, the court of appeals remanded for consideration of the public duty doctrine outlined in Sawicki v.Ottawa Hills (1988), 37 Ohio St.3d 222.
After further appeal, the Ohio Supreme Court first held that issues of fact existed concerning whether the Board and its agents had acted in good faith. Next, the court considered the public duty doctrine, which prohibited suit against a municipality for violation of duties to the public at large. An exception to the doctrine did exist, i.e., a claim was permitted in situations where a "special relationship or duty" had arisen. Id. InBrodie, the court held that the public duty doctrine did not apply to the Childrens Services Board because of the "specific and mandatory language of R.C. 2151.421" and the fact that the statute was intended to protect a particular child who was injured, not the public at large. Id. at 119. Consequently, the court held that:
 a children services board and its agents have a duty to investigate and report their findings as required by R.C. 2151.421 when a specific child is identified as abused or neglected and the public duty doctrine may not be raised as a defense for agency failure to comply with such statutory requirements.
Id.
The third issue considered in Brodie was the extent of the immunity granted by R.C. 2151.421(G) to persons participating either in the making of reports or in judicial proceedings resulting from the reports. Concerning this point, the Ohio Supreme Court agreed with the court of appeals that the immunity did not attach to individuals who failed to carry out the requirements of the statute. Id. at 120. While discussing this issue, the court explicitly noted that the immunity from liability granted by R.C. Chapter 2744 was unavailable because the events in the case took place before the chapter's effective date. Id. at 120, n. 6.
Subsequently, in Crago v. Lorain Cty. Commrs. (1990), 69 Ohio App.3d 24, the Ninth District found, based on Brodie, that: 1) the childrens services board has a duty under R.C. 2151.421 to investigate and report alleged child abuse; 2) the duty creates a "special relationship;" and 3) a failure to perform the duty is actionable. Id. at 26-27. In light of these findings, the court also held that the immunity exceptions in R.C. 2744.02(B)(5) and R.C. 2744.03(A)(6) applied, i.e., if a statute expressly imposes liability, political subdivisions and their employees are not immune from suit. In this regard, the court stated that:
 [b]y virtue of the express grant of limited immunity in R.C. 2151.421(G), there is an express recognition that liability can be imposed on an agency for other, excluded conduct. Therefore, a claim that a children services board and its employees failed to properly investigate an instance of alleged abuse pursuant to duties imposed by R.C. 2151.421 is not subject to the general immunity granted to political subdivisions by R.C. 2744.02(A) or to the immunity granted to employees by R.C. 2744.03(A)(6).
Id. at 26. After Crago, the Ninth District continued to rely onBrodie for the proposition that R.C. 2151.421 creates a private cause of action. See, Curran v. Walsh Jesuit High School, Inc. (1995), 99 Ohio App.3d 696.
In 1993, the Fifth District followed both Brodie and Crago inReed v. Perry Cty Children's Serv. (June 29, 1993), Perry App. No. CA-429, unreported. In Reed, the Children's Services Board (CSB) received reports that a mother threatened to harm her children, but failed to adequately investigate. Unfortunately, the children were eventually murdered by their mother. The father (who had notified CSB of the threats), then filed suit against CSB and various other individuals to recover for the deaths of his children. At the trial court level, CSB filed a motion to dismiss based on immunity, but the court overruled the motion. After a jury verdict against CSB and others resulted, CSB appealed, claiming the trial court had erred in refusing to grant its motion to dismiss. However, the Fifth District Court of Appeals disagreed. First, the Fifth District noted that Chapter 2744 controlled. The court then found, based on Brodie and Crago, that R.C. 2151.421 expressly imposed liability for purposes of the immunity exception in R.C. 2744.02(B)(5). Id. at p. 3-4. Additionally, the court held that the "special relationship" theory created by Sawicki v. Ottawa Hills (1988), 37 Ohio St.3d 222
had survived the enactment of Chapter 2744. Id. at p. 4.
Notably, Crago, Reed, and Curran did not consider the fact that Brodie was decided before R.C. Chapter 2744 was effective. However, in Rich v. Erie Cty. Dept. Of Human Resources (1995),106 Ohio App.3d 88, the Sixth District did discuss this point. InRich, the trial court granted a motion to dismiss based on the Department's immunity under R.C. Chapter 2744. On appeal, the plaintiffs relied on Brodie, but the Sixth District felt this was questionable since Brodie had been decided before the effective date of the Political Subdivision Tort Liability Act. Nonetheless, the court decided to apply Brodie anyway, stating that:
 we are convinced that the concerns of the Supreme Court and the legislature that abused and neglected children be protected from further harm are as strong as ever, and that the adoption of R.C. Chapter 2744 was not intended to create a blanket immunity for harm done to these children. We believe it is appropriate to apply the Brodie standard in this case.
Id. at 93. In light of this holding, as well as the fact that the actions in question were discretionary, the court in Rich went on to consider whether the Department's decision to return a child to its mother was reckless or wanton. Although the child died after being returned, and the court felt, in hindsight, that the decision had been a "tragic mistake," the court did not find any evidence of reckless or wanton disregard for the child's rights. Id. at 94. Consequently, the trial court's dismissal of the case was affirmed.
In a suit in which sovereign immunity was not an issue, the Eighth District has also commented, based on Brodie, that a negligence action can be maintained against a county agency for violation of the duty found in R.C. 2151.421. Hite v. Brown
(1995), 100 Ohio App.3d 606, 616 (relying on Brodie to find that private psychologists can be sued for negligence in failing to report abuse as required by R.C. 2151.421).
In contrast to the above decisions, the Third District has rejected the concept that R.C. 2151.421 expressly imposes liability for purposes of the immunity exception in R.C.2744.02(B)(5). See, Lynch v. Auglaize Cty. Dept. of Human Serv. (Apr. 23, 1999), Auglaize App. No 2-99-01, unreported. In Lynch, the Department of Human Services received complaints of abuse and investigated, but did not take custody of the children. One of the children died after being abused, and suit was then brought against the Department. Id. at p. 2. Despite these facts, the trial court granted summary judgment to the Department on immunity grounds. On appeal, the plaintiffs argued, based on Brodie, that R.C. 2151.421 expressly imposed liability on the Department. The Third District disagreed, stating that:
 this argument is not supported by Brodie. In Brodie, the Court held that the agency might be liable if its employees were negligent in providing services to an identified neglected or dependent child. * * * However, the Court also stated as follows:
 R.C. Chapter 2744 limits tort liability of political subdivisions to certain specified circumstances. The chapter outlines the circumstances under which a political subdivision can and cannot be held liable for its acts or the acts of its employees. * * *
 Brodie did not apply the statute because it became effective only after the claim arose. In this case, the claim arose after the effective date, so the statute and not the holding of Brodie is controlling.
* * *
 R.C. 2151.421(F) requires the agency receiving a report of abuse to investigate the allegation within 24 hours. Immunity is granted for any actions taken in the investigation or the subsequent judicial proceedings. R.C. 2151.421(G)(6). However, R.C. 2151.421 does not expressly impose liability on a political subdivision for failure to comply with its requirements or those of any supporting regulations. Thus, the exception to immunity provided by R.C. 2744.02(B)(5) does not apply.
Id. at p. 3.
Based on our previous decisions interpreting R.C.2744.02(B)(5), we agree with the Third District that R.C. 2151.421
does not expressly impose liability for purposes of the immunity exception. In Glover v. Dayton Public Schls. (Aug. 13, 1999), Montgomery App. No. 17601, unreported, we discussed in some detail the issue of express imposition of liability under R.C.2744.02(B)(5) and R.C. 2744.03(A)(6)(c). The point made in Glover
and in other cases we have decided is that the statute itself must expressly impose liability for the subject matter of the particular suit. Id. at pp. 15-16. See also, Farra v. City ofDayton (1989), 62 Ohio App.3d 487 (rejecting express imposition of liability because R.C. 163.03 did not explicitly provide for damages for the subject matter of the suit in question, i.e., intentional interference with an individual's business interests.)
In Glover, we also focused on the examples of express imposition of liability listed in R.C. 2744.02(B)(5) and found them to be very explicit in imposing liability. Id. at p 16. For example, one of the statutes listed in R.C. 2744.02(B)(5) says that "[n]egligent failure to comply with section 5591.36 of the Revised Code shall render the county liable for all accidents or damages as a result of that failure." R.C. 5591.37. By contrast, the wording of R.C. 2151.421 is quite different.
When construing statutes, courts "first look at the specific language contained in the statute, and, if the language is unambiguous, * * * [they] then apply the clear meaning of the words used. Roxane Laboratories, Inc. v. Tracy (1996), 75 Ohio St.3d 125,127. After reviewing the content of R.C. 2151.421 from this perspective, we find no ambiguity requiring us to apply further principles of statutory construction. As we mentioned above, R.C. 2151.421((A) requires various individuals and groups, including school teachers, to report suspected abuse. However, this section of the statute does not impose liability for failure to do so. In fact, the only part of the statute mentioning any type of liability is subsection (G), which says:
 (G)(1)(a) Except as provided in division (H)(3) of this section, anyone or any hospital, institution, school, health department, or agency participating in the making of reports under division (A) of this section, anyone or any hospital, institution, school, health department, or agency participating in good faith in the making of reports under division (B) of this section, and anyone participating in good faith in a judicial proceeding resulting from the reports, shall be immune from any civil or criminal liability for injury, death, or loss to person or property that otherwise might be incurred or imposed as a result of the making of the reports or the participation in the judicial proceeding.
* * *
 (2) In any civil or criminal action or proceeding in which it is alleged and proved that participation in the making of a report under this section was not in good faith or participation in a judicial proceeding resulting from a report made under this section was not in good faith, the court shall award the prevailing party reasonable attorney's fees and costs and, if a civil action or proceeding is voluntarily dismissed, may award reasonable attorney's fees and costs to the party against whom the civil action or proceeding is brought.
Thus, the plain wording of the statute indicates that rather than expressly imposing liability, it grants a good faith immunity to all groups or persons, public or private, who make abuse reports or participate in judicial proceedings arising from the making of such a report. As was noted by the Ohio Supreme Court in Gersperv. Ashtabula County Children Services Bd. (1991), 59 Ohio St.3d 127:
 The purpose of R.C. 2151.421(G) is clear. The General Assembly enacted division (G) to encourage those who know or suspect that a child has fallen victim to abuse or neglect to report the incident to the proper authorities and/or participate in the judicial proceedings to secure the child's safety without fear of being exposed to civil or criminal liability.
Id. at 130. Furthermore, while subsection (G)(2) allows attorney fees to be awarded, the fees are limited to situations where the making of the report or the participation in judicial proceedings is alleged and proven to have been in bad faith.
As a final point, even if R.C. 2151.421(G) could be construed as implying liability of some sort (which is inconsistent with the term "express"), it does not impose liability for the matters at issue in this case. The statute creates a duty to report, but speaks only about reporting in bad faith or participating in bad faith in judicial proceedings arising out of an abuse report that has been made. The potential plaintiffs in such cases would be persons injured by a false abuse report, such as the parents or custodians of the child, and the basis for the suit would possibly be defamation or a similar tort. By contrast, the present situation involves an action for damages for a failure to report abuse. Accordingly, no matter how we interpret or construe R.C.2151.421, the statute plainly does not expressly impose liability as required by R.C. 2744.03(A)(6)(c) nor as required by R.C.2744.02(B)(5), which contains a similar exception to the immunity granted to political subdivisions. See, Glover, supra, at p. 22.
In view of the preceding analysis, the first assignment is overruled.
 II
In the second assignment of error, the Campbells contend that the trial court erred in finding Superintendent Clifton immune from liability. The only matter raised to support Clifton's liability is the argument contained in the first assignment of error. Accordingly, for the reasons just mentioned, we find the second assignment of error without merit.
 III
The third assignment of error is based on the trial court's alleged error in concluding that Debra Mallonee's functions in connection with the mediation program were governmental rather than proprietary. If the mediation program is considered a proprietary activity, the Board of Education would be liable under the immunity exception found in R.C. 2744.02(B)(2), which states that "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." In this context, R.C. 2744.01 defines a "governmental function" as:
 (C)(1) * * * a function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following:
 (a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;
 (b) A function that is for the common good of all citizens of the state;
 (c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function.
 (2) A "governmental function" includes, but is not limited to, the following:
* * *
(c) The provision of a system of public education.
On the other hand, R.C. 2744.01 defines a "[p]roprietary function" as:
 (G)(1) * * * a function of a political subdivision that is specified in division (G)(2) of this section or that satisfies both of the following:
 (a) The function is not one described in division (C)(1)(a) or (b) of this section and is not one specified in division (C)(2) of this section;
 (b) The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons.
The Campbells agree that provision of a system of public education is a function specified in R.C. 2744.01(C)(2) (meaning it is a governmental function). They also agree that the mediation program was offered and administered through the school system. However, they claim the program fails to qualify as a governmental function because it was not a "mandatory" part of the public education system. We disagree, as a function does not have to be a "mandatory" part of a system to be considered a governmental activity. Specifically, many activities that are not required by statute take place at schools and are considered part of the public education system. See, Hall v. Ft. Frye Loc. SchoolDist. Bd. of Edn. (1996), 111 Ohio App.3d 690, 702, n. 1 (maintenance of high school football practice playing field is governmental function under R.C. 2744.01(G)(2)(c), i.e., is part of the provision of a system of public education); and Geraci v.Conte (June 18, 1998), Cuyahoga App. No. 72440, unreported (board of education was engaged in the provision of a system of public education and a governmental function when it allowed students to be transported in school board buses to principal's house for informal, extra-curricular swim parties).
Moreover, functions of agencies or groups in other areas have been held to be governmental although they are not specifically listed as such in R.C. 2744.01(C)(2), and would not typically be considered "mandatory" parts of the particular political subdivision activity. For example, in Siebenaler v. Montpelier
(1996), 113 Ohio App.3d 120, 123, the provision of swimming lessons for a fee was held to be a governmental activity under R.C. 2744.01(C)(2)(u), which classifies "repair, maintenance and operation of any park * * * or swimming pool." as a governmental function. Similarly, in Colling v. Franklin Cty. ChildrenServices (1993), 89 Ohio App.3d 245, 252, an off-site recreational outing was considered a governmental function under R.C.2744.01(C)(2)(o), which refers only to "[t]he operation of * * * children's homes or agencies."
Because the term "governmental function" encompasses activities that are not mandatory, the trial court did not err in finding that the mediation program and Mallonee's participation in the program were governmental functions under R.C.2744.01(C)(2)(c). Consequently, the third assignment of error is without merit and is overruled.
 IV
In the final assignment of error, the Campbells contend that the Board is liable under the exception to immunity contained in R.C. 2744.02(B)(5). As we mentioned during our discussion of the first assignment of error, R.C. 2744.02(B)(5) allows political subdivisions to be held liable for injury, death, or loss to persons or property when liability is expressly imposed by a section of the Revised Code. As support for their claim that the Board is liable under this immunity exception, the Campbells once again rely on the mandatory nature of the duties imposed by R.C.2151.421. For the reasons previously mentioned, we reject this argument.
As additional sources of express imposition of liability, the Campbells point to R.C. 2744.07(A)(1) and R.C. 2744.07(A)(2), which require political subdivisions to defend and indemnify employees in connection with actions brought against the employees. According to the Campbells, these statutory duties to defend and indemnify qualify as express impositions of liability under R.C. 2744.02(B)(5). Clearly, this is not the case. As was noted by the Ninth District in Piro v. Franklin Twp. (1995),102 Ohio App.3d 130, "[r]equiring the subdivision to indemnify its employee is entirely different from imposing direct liability on the subdivision." Id. at 141 [interpreting R.C. 2744.02(A)(2)]. We agree with this statement, and, therefore, find the Campbells' argument without merit.
As a final matter, we note that the Campbells have submitted supplemental authority, i.e., the case of Perkins v. Norwood
(1999), 85 Ohio St.3d 191. According to the Campbells, Perkins
holds that immunity exists only where a high degree of discretion is associated with a decision. They also claim R.C. 2744.03
(A)(5) applies to the present case because the use of resources (the group counseling program) was involved. In this regard, R.C.2744.03(A)(5) states that:
 [t]he subdivision is immune from liability if the injury * * * resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.
Based on the fact that R.C. 2151.421 is mandatory, the Campbells contend the Board could not have exercised discretion. The Campbells also apparently read R.C. 2744.03(A)(5) and Perkins as imposing liability unless a significant degree of discretion is involved.
We reject this argument. In the first place, liability does not even attach to a political subdivision's acts unless an exception to immunity exists under R.C. 2744.02(B)(1) through (5).Cater v. Cleveland (1998), 83 Ohio St.3d 24, 28. Once an exception has been found to apply, the political subdivision may then assert additional defenses such as the defense in R.C. 2744.03(A)(5). Id. Since we have rejected the only exceptions to immunity that have been asserted against the Board in this case [the express imposition of liability in R.C. 2744.02(B)(5), and the exception for proprietary functions in R.C. 2744.02(B)(2)], we do not reach the question of whether an additional defense might exist under R.C. 2744.03(A)(5). Furthermore, Perkins does not remove immunity in all situations other than those involving a high degree of discretion. In Perkins, the court first found that the immunity exception in R.C. 2744.02(B)(4) applied (the exception for injuries occurring on the grounds of a building used for a governmental function). Only then did the court go on to consider if the further immunity for discretionary acts in R.C.2744.03(A)(5) prevented the school district from being held liable. 85 Ohio St.3d at 192-93. This is consistent with our analysis and with the analytical process outlined in Cater.83 Ohio St.3d at 28.
Based on the preceding discussion, the fourth assignment of error is without merit and is overruled. Having overruled all of the assignments of error, we affirm the judgment of the trial court.
GRADY, P.J. and BROGAN, J., concur.
Copies mailed to:
Gary J. Leppla, Nicholas E. Subashi, David J. Arens, Douglas G. Houston, Hon. Thomas M. Rose