DECISION AND JUDGMENT ENTRY
Rebecca Watters sued Ross County Children's Services ("RCCS"), the Ross County Sheriff's Department[1] and Cecelia Seckman for the wrongful death of her son, Jeremy Watters, in the Court of Common Pleas for Pickaway County. The trial judge subsequently granted RCCS' motion for summary judgment but denied Ms. Seckman's similar motion. Ms. Seckman appeals and raises two assignments of error:
Assignment of Error No. 1:
 "The trial Court erred in finding that the issue of whether Cecelia Seckman was an employee/agent of Ross County Children's Services for purposes of immunity under R.C. § 2744 represented a genuine issue of material fact, thereby overruling Seckman's motion for summary judgment."
 Assignment of Error No. 2:
 "The trial Court erred in finding there are issues of material fact regarding whether Cecelia Seckman's alleged acts fall under the exception to immunity listed in R.C. § 2744.03(A)(6)(a) and (b)."
Ms. Watters appeals the summary judgment granted to RCCS and raises two assignments of error:
Assignment of Error No. 1:
 "Did the Trial Court err in finding that there were no genuine issues of material fact regarding the exception to immunity for political subdivisions provided by R.C. 2744.02(B)(5) and in granting Ross County Children's Services' Motion for Summary Judgment premised on the grant of immunity in R.C. 2744.02(A)(1)?"
 Assignment of Error No. 2:
 "Did the Trial Court err by holding that giving medication to a child in foster care is a governmental function of Ross County Children's Services under R.C. 2744.01 and in granting Ross County Children's Services [sic] Motion for Summary Judgment premised on the grant of immunity in R.C. 2744.02(A)(1)?"
We hold that this Court does not have jurisdiction to review Ms. Seckman's appeal because the trial court's denial of summary judgment is not a final appealable order. We further hold that the grant of summary judgment to RCCS was proper as RCCS is immune from liability pursuant to R.C. 2744.02.
 I.
On January 29, 1997, RCCS received a complaint of child abuse and neglect concerning Jeremy Watters. Specifically, the referral alleged that the trailer in which Jeremy was living was poorly ventilated, that the windows had black soot on them, that smoke was seen coming out of the doors when opened, that the mother and father were always dirty from smoke and that the child was seen only when riding in a car. The referral also alleged that Jeremy did not go to school, was in a wheelchair and that no tutor was observed coming to the home.
On January 30, 1997, RCCS investigator Pam Bowling traveled to 319 Third Street, Bainbridge, Ohio, to investigate the allegations. Ms. Bowling spoke to Ms. Watters and her companion, Don Steele, who were both covered with soot. Mr. Steele initially denied that Jeremy was in the trailer but eventually admitted that Jeremy was home. Ms. Bowling requested permission to enter the residence but was denied entry. Prior to leaving, Ms. Bowling advised Ms. Watters to repair the ventilation in her home and explained that someone would return to see Jeremy.
The following day, Ms. Bowling, Deputy Alvin Immell of the Ross County Sheriff's Department and Gail Kern of the Ross County Health Department visited the Watters' home. Ms. Bowling observed that there was no running water or heat in the home, there were holes in the trailer allowing one to see through to the outside and there was soot covering the walls and ceiling. Jeremy appeared to be wheezing and having trouble breathing and was covered with soot.
Ms. Watters was arrested for child endangerment and taken to the Ross County Jail. Jeremy was taken into the custody of RCCS and transported to Adena Regional Medical Center in Chillicothe, Ohio, for a medical examination. The medical examination revealed that Jeremy did not have full capacity of one side of his lung. Jeremy was afflicted with cerebral palsy and was underweight even for a child with this disease. RCCS further learned that Jeremy had last been seen by a doctor in January 1995, despite medical advice at that time that a follow-up examination was necessary. Jeremy stayed at the hospital until February 1, 1997, when the hospital discharged him in satisfactory and stable condition.
Upon his release from the hospital, RCCS placed Jeremy in the care of foster mother Cecelia Seckman. Ms. Seckman was chosen because she had space available in her home for a foster child and she had experience caring for patients with special needs. At all relevant times, Ms. Seckman was a foster mother certified by the State of Ohio.
On the morning of February 3, 1997, Ms. Seckman was in the car with her daughter and Jeremy when she noticed that Jeremy's fingers were blue. Ms. Seckman instructed her daughter to drive to the hospital. On the way to the hospital, Jeremy stopped breathing and the two women took him to the Circleville Rescue Squad. The rescue squad transported Jeremy to Berger Hospital in Circleville, Ohio. When he arrived at the emergency room, Jeremy was in full cardiac and respiratory arrest. Jeremy was pronounced dead after repeated resuscitation efforts failed. An autopsy revealed a toxic level of the antihistamine pseudoephedrine, which led to his death, in Jeremy's blood. Ms. Seckman denies providing any pseudoephedrine to Jeremy.
In her complaint, Ms. Watters alleged that RCCS and Ms. Seckman were guilty of reckless and wanton misconduct and negligence in supplying toxic amounts of pseudoephedrine, which led to Jeremy's untimely death. Both RCCS and Ms. Seckman moved for summary judgment on Ms. Watters' complaint. The trial court granted RCCS' motion, finding that RCCS was immune from suit pursuant to R.C. Chapter 2744. The trial court further held that reasonable minds could differ as to whether Ms. Seckman was an agent of RCCS and, therefore, summary judgment was inappropriate as to the claim against Ms. Seckman. Both Ms. Watters and Ms. Seckman filed timely appeals. We granted Ms. Watters' motion to consolidate these two appeals.
 II.
We must first address the propriety of Ms. Seckman's appeal. Ms. Watters urges us to dismiss this appeal because, she argues, the trial court's denial of summary judgment is not a final appealable order. Generally, a trial court's denial of summary judgment is not a final appealable order because it does not determine the action. See Whiteside, Ohio Appellate Practice (1999 Ed.) 59, Section 2.36. See, also, R.C. 2565.02; State exrel. Overmeyer v. Walinski (1966), 8 Ohio St.2d 23. However, effective January 27, 1997, the General Assembly amended R.C.2744.02 to add paragraph (C), which states:
 An order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in Chapter 2744, or any other provision of the law, is a final order.
In the past, we have relied upon R.C. 2744.02(C) to establish the jurisdictional basis to review the denial of immunity in the summary judgment context. See Lutz v. Hocking Tech. College (May 18, 1999), Athens App. No. 98CA12, unreported. However, since that amendment to chapter 2744 was part of Am.Sub.H.B. 350, we no longer can do so. Recently, the Supreme Court of Ohio held Am.Sub.H.B. 350 to be unconstitutional in toto. See State ex rel.Ohio Academy of Trial Lawyers v. Sheward (1999), 86 Ohio St.3d 451. In doing so, the Supreme Court returned the law concerning final appealable orders to its status prior to the adoption of R.C. 2744.02(C). See Burger v. Cleveland Hts. (1999), 87 Ohio St.3d 188,189 (affirming the dismissal of an appeal by a court of appeals for lack of a final appealable order). In light of the fact that the action against Ms. Seckman remains pending, albeit in inactive status, we lack jurisdiction to review this appeal because the trial court's denial of summary judgment is not a final appealable order. Id. See also Thomas Vending, Inc. v.Slagle (Sept. 24, 1999), Marion App. No. 9-99-16, unreported;Perry v. Goodin (Sept. 16, 1999), Mahoning App. No. 99CA187, unreported. Therefore, as we have no jurisdiction to decide Ms. Seckman's appeal, we have no choice but to dismiss it.
 III.
Ms. Watters' two assignments of error contend that the trial court erroneously granted summary judgment to RCCS. When reviewing a grant of summary judgment, we apply the same standard used by the trial court, affording no deference to the trial court's decision. Evans v. S. Ohio Med. Ctr. (1995), 103 Ohio App.3d 250,253; Karmasu v. Hughes (1995), 100 Ohio App.3d 434,436. Summary judgment under Civ.R. 56(C) is appropriate when: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence, when viewed most strongly in favor of the non-moving party, that reasonable minds can come to a conclusion only in favor of the moving party. Bostic v. Connor
(1988), 37 Ohio St.3d 144, 146; Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64, 66. The party moving for summary judgment bears the burden of showing that no genuine issue of material fact exists. Mitseff v. Wheeler (1988), 38 Ohio St.3d 112,115. To survive summary judgment, the non-moving party must produce evidence showing that a genuine issue of fact exists concerning any issue for which the non-moving party bears the burden of proof. See Civ.R. 56(E); see, also, Mitseff,38 Ohio St.3d at 115. In determining whether a triable issue of fact exists, a court should not pass upon the credibility of witnesses or weigh the relative value of their testimony. McGee v. GoodyearAtomic Corp. (1995), 103 Ohio App.3d 236, 243.
 A.
In Ms. Watters' first assignment of error, she argues that summary judgment was improper because genuine issues of material fact exist regarding whether the employees of RCCS acted in bad faith by failing to pursue alternative arrangements to foster care for Jeremy. The trial judge determined that RCCS is immune from liability for Jeremy's death under R.C. Chapter 2744 unless one of the five exceptions delineated in R.C. 2744.02(B) applies. The trial judge also found that R.C. 2744.02(B)(5), which provides for liability when it is expressly imposed by the Revised Code, is applicable in this matter because R.C.2151.421(G)(2) imposes liability on RCCS if it acted in bad faith in either making a report or in participating in judicial proceedings in connection with a report received by RCCS. The trial court found that RCCS did not act in bad faith by removing Jeremy from his home or placing him in foster care and, therefore, no liability could be imposed on RCCS pursuant to R.C.2151.421(G)(2). While we agree with the trial court's conclusion that summary judgment was appropriate in this case, we disagree with the rationale the trial court used to reach this result.
R.C. 2744.02(A)(1) creates a general grant of immunity to governmental entities. It reads:
 * * * Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.
Once immunity is established under R.C. 2744.02(A)(1), the court must determine whether any of the five exceptions to immunity in subsection (B) apply. Cater v. Cleveland (1998), 83 Ohio St.3d 24,28. If one of the exceptions is applicable, immunity can be reinstated if the political subdivision can successfully argue that one of the defenses contained in R.C. 2744.03 applies. Id. In this matter, we need not reach the third tier of the analysis.
RCCS is clearly a political subdivision of the State of Ohio for governmental immunity purposes. See Wilson v. Stark Cty.Dept. of Human Serv. (1994), 70 Ohio St.3d 450, 453. Therefore, RCCS is immune from liability under R.C. 2744.02(A)(1) for Jeremy's death unless one of the provisions of R.C. 2744.02(B) applies.
Ms. Watters asserts that R.C. 2744.02(B)(5) excepts RCCS from immunity in this matter. R.C. 2744.02(B)(5) states that:
 In addition to the circumstances described in division (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to persons or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Liability shall not be construed to exist under another section of the Revised Code merely because a responsibility is imposed upon a political subdivision or because of a general authorization that a political subdivision may sue and be sued.[2]
(Emphasis supplied).
Ms. Watters asserts that R.C. 2151.421(G)(2) imposes civil liability on persons or government agencies who report child neglect, who investigate these reports, or who participate in judicial proceedings arising from such reports in bad faith. R.C.2151.421(G)(2) states:
 In any civil or criminal action or proceeding in which it is alleged and proved that participation in the making of a report under this section was not in good faith or participation in a judicial proceeding resulting from a report made under this section was not in good faith, the court shall award the prevailing party reasonable attorney's fees and costs and, if a civil action or proceeding is voluntarily dismissed, may award reasonable attorney's fees and costs to the party against whom the civil action or proceeding is brought.
We hold that this statute does not expressly impose liability upon RCCS as required under R.C. 2744.02(B)(5) in order to create an exception to the general grant of immunity. Rather, R.C.2151.421(G)(2) merely allows for the imposition of attorney's fees and costs in bad-faith-referral cases. Merk v. Watts (Sept. 7, 1994), Medina App. No. 2340-M, unreported; Campbell v. Burton
(Aug. 27, 1999), Greene App. No. 99CA12, unreported.
When construing statutes, courts "first look at the specific language contained in the statute, and, if the language is unambiguous, * * * [they] then apply the clear meaning of the words used." Roxane Laboratories, Inc. v. Tracy (1996), 75 Ohio St.3d 125,127. We find no ambiguity in R.C. 2151.421(G)(2) that would require us to apply additional principles of statutory construction. R.C. 2151.421(G)(2) does not expressly impose civil liability on a governmental agency for acting in bad faith in the investigation of a report or participation in judicial proceedings arising out of such a report. Furthermore, the examples of express imposition of liability listed in R.C.2744.09(B)(5) are clear in their imposition of liability. For example, R.C. 2743.02(B) states that, "The state hereby waives the immunity from liability of all hospitals owned or operated by one or more political subdivisions and consents for them to be sued * * *." Ms. Watters has not directed this Court to any other provision of the Revised Code that expressly imposes liability as required by R.C. 2744.02(B)(5).
Ms. Watters also relies heavily on two cases to support her position that RCCS is not immune in this case. Both of these cases are based on the Supreme Court of Ohio's decision in Brodiev. Summit Cty. Children Serv. Bd. (1990), 51 Ohio St.3d 112. InBrodie, the Supreme Court held that R.C. 2151.421[3] does not confer immunity upon those who fail to carry out the mandate of that statute requiring investigation of child abuse and neglect complaints. Brodie, supra, at syllabus. However, the Supreme Court explicitly noted that the immunity granted by R.C. Chapter 2744 was inapplicable because the events in the case occurred prior to the chapter's effective date. Id. at 119, n. 6.
Ms. Watters cites the Ninth District's decision in Crago v.Lorain County Commissioners (1990), 69 Ohio App.3d 24, for the proposition that "a claim that a children services board and its employees failed to properly investigate an instance of alleged child abuse pursuant to duties imposed by R.C. 2151.421 is not subject to the general immunity granted by R.C. 2744.02(A) * * *." Id. at 27. The Crago court also held that this duty to investigate creates a "special relationship" between the child and children's services agency and the failure to perform the duty is actionable. Id. at 26-27. Based on these findings and the Supreme Court's ruling in Brodie, the Ninth District held that "[b]y virtue of the express grant of limited immunity in R.C.2151.421(G), there is an express recognition that liability can be imposed on an agency for other, excluded conduct." Id.
Ms. Watters also relies on the Sixth District's decision inRich v. Erie Cty. Dept. of Human Resources (1995), 106 Ohio App.3d 88. In Rich, the Sixth District held that liability could still exist under the Brodie and Crago analyses despite the fact that R.C. Chapter 2744 is now applicable. Specifically, the Rich
court held that "the adoption of R.C. Chapter 2744 was not intended to create a blanket immunity for harm done to these children." Id. at 93. The Sixth District Court of Appeals went on to consider whether the Department of Human Resources' decision to return a child to its mother was reckless or wanton. Id. at 94.
Because Brodie was not based upon the currently effective version of R.C. Chapter 2744, neither it nor the holdings ofCrago and Rich require us to ignore the plain language of R.C.2151.421(G)(2). Furthermore, Crago and Rich are based on the premise that liability is imposed by R.C. 2151.421(G)(1) for failure to investigate a claim. Here, Ms. Watters does not argue that liability should be imposed based on this section of the code or that RCCS was negligent in failing to investigate a complaint related to Jeremy.
We agree with the Second District's analysis in Campbell v.Burton that R.C. 2151.421 does not expressly impose liability for purposes of the immunity exception. Campbell, supra. See, also,Colling v. Franklin Cty. Children Serv. (1993), 89 Ohio App.3d 245
(holding that Brodie and Crago cannot control); Lynch v.Auglaize Cty. Dept. of Human Serv. (Apr. 23, 1999), Auglaize App. No. 2-99-01, unreported (holding that R.C. Chapter 2744 and notBrodie controls when determining tort liability of political subdivisions). Reliance on Brodie is inappropriate as the Supreme Court explicitly stated that it was not based on the provisions of R.C. Chapter 2744. Consequently, we rely on the language of the statute and not on the case law cited by Ms. Watters to determine the status of RCCS' immunity claim. We therefore reject Ms. Watters' contention that her claim fits within the exception to immunity provided by R.C. 2744.02(B)(5).
Ms. Watters' first assignment of error is overruled.
 B.
In her second assignment of error, Ms. Watters asserts that summary judgment was inappropriate because her claim falls within the immunity exception provided by R.C. 2744.02(B)(2). R.C.2744.02(B)(2) provides that:
 Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.
Ms. Watters claims that Cecelia Seckman's negligent act of providing medication to Jeremy is a proprietary function and, therefore, RCCS can be held liable under this statute. The trial judge found that even assuming, arguendo, that Ms. Seckman is an employee of RCCS, RCCS is still entitled to judgment as a matter of law because Ms. Seckman's actions were a governmental, not a proprietary, function.
R.C. 2744.01 defines "governmental function" and "proprietary function" for purposes of R.C. 2744. R.C. 2744.01(C) defines "governmental function" as:
 (1) * * * a function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following:
 (a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;
 (b) A function that is for the common good of all citizens of the state;
 (c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function.
 (2) A "governmental function" includes, but is not limited to, the following:
* * *
 (m) The operation of a human services department or agency, including, but not limited to, the provision of assistance to aged and infirm persons and to persons who are indigent;
* * *
 (o) The operation of mental health facilities, mental retardation or developmental disabilities facilities, alcohol treatment and control centers, and children's homes or agencies;
* * *
 (w) A function that the general assembly mandates a political subdivision to perform.
R.C. 2744.01(G)(1) defines a "proprietary function" as:
 * * * a function of a political subdivision that is specified in division (G)(2) of this section or that satisfies both of the following:
 (a) The function is not one described in division (C)(1)(a) or (b) of this section and is not one specified in division (C)(2) of this section;
 (b) The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons.
Ms. Watters does not allege nor do we find that Ms. Seckman's provision of medication to Jeremy falls under any of the specific proprietary functions outlined in R.C. 2744.01(G)(2). Rather, Ms. Watters argues that it is not necessary for a foster mother to provide medication to a child in order to serve the public at large and that giving medicine to a child is an activity normally engaged in by nongovernmental persons. Therefore, the dispersal of medication to Jeremy must be construed as a proprietary function.
Ms. Watters fails to account for the provisions of R.C.2744.01(C)(2) that list specific governmental functions. Operation of a children's services agency constitutes a "governmental function" pursuant to R.C. 2744.01(C)(2)(o). Even though it may be unnecessary to provide medication to all children when operating a children's services agency, the provision of medication to sick children within its custody certainly falls within the required duties of the state when exercising its parens patriae role as caretaker of neglected children.
In Colling v. Franklin Cty. Children Serv. (1993), 89 Ohio App.3d 245,252, the appellant argued that taking children on a fishing outing was a proprietary function because such an outing was not essential to the operation of the children's services agency or its purposes and, therefore, could not fall within the agency's immune operations. The Tenth District disagreed because the agency was required to ensure that the children received "adequate recreational opportunities" as part of their care and that the trip fell within the range of those recreational opportunities. Id. The purpose of RCCS is to provide for the safety and care of abused and neglected children; providing medication to children within its care falls within the realm of protection that RCCS provides.
As the provision of medication to Jeremy clearly falls within the definition of a governmental function in R.C.2744.01(C)(2)(o), this action cannot be a proprietary function pursuant to R.C. 2744.01(G)(1)(a). Therefore, R.C. 2744.02(B)(2) is inapplicable and RCCS is entitled to summary judgment because it is immune from liability pursuant to R.C. Chapter 2744. We overrule Ms. Watters' second assignment of error.
Having overruled both of Ms. Watters' assignments of error, we uphold the trial court's grant of summary judgment in favor of RCCS.
In summary, we dismiss the appeal in Case No. 99CA9 for lack of jurisdiction and affirm the judgment in Case No. 99CA12.
APPEAL DISMISSED IN CASE NO. 99CA9; JUDGMENT AFFIRMED IN CASE NO. 99CA12.
[1] The Ross County Sheriff's Department was voluntarily dismissed from the lawsuit on July 13, 1998.
[2] Am.Sub.H.B. 350 modified the last sentence of R.C.2744.02(B)(5) to read, "Liability shall not be construed to exist under another section of the Revised code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term `shall' in a provision pertaining to a political subdivision." Am.Sub.H.B. 350 became effective on January 27, 1997. Therefore, this modified version of (B)(5) was applicable when the events in this case occurred. However, as explained earlier in this opinion, the Supreme court of Ohio recently held Am.Sub.H.B. 350 to be unconstitutional intoto. See State ex rel. Ohio Academy of Trial Lawyers v. Sheward
(1999), 86 Ohio St.3d 451. In doing so, the court returned (B)(5) to its status prior to the adoption of Am.Sub.H.B. 350. The substance of (B)(5) as it affects this case is the same under both versions.
[3] The Brodie court was referring to current subsection (G)(1) of R.C. 2151.421, which provides immunity for anyone making a report who is statutorily required to do so (i.e. physicians), immunity as long as the report is based on a good faith belief for those not required to make a report, and immunity for anyone participating in good faith in a judicial proceeding resulting from a report.
(Watters v. Seckman)
 JUDGMENT ENTRY
It is ordered that the Appeal be DISMISSED for lack of jurisdiction.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
ABELE, J.: Concurs in Judgment and Opinion.
EVANS, J.: Concurs in Judgment Only with Attached Concurring Opinion.
For the Court
 BY: ________________________________ WILLIAM H. HARSHA, JUDGE
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.
(Watters v. Ross County Children's Services)
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
ABELE, J. EVANS, J.: Concur in Judgment and Opinion.
For the Court
 BY: ________________________________ WILLIAM H. HARSHA, JUDGE
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.