BRODIE, GUARDIAN AD LITEM, APPELLEE, *v.* SUMMIT COUNTY CHILDREN SERVICES BOARD ET AL., APPELLANTS.

[Cite as Brodie *v.* Summit Cty. Children Services Bd. (1990), 51 Ohio St. 3d 112.]

(No. 88-2087—Submitted December 5, 1989—Decided May 23, 1990.)

*Sremack & Jack* and *William M. Sremack,* for appellee.

*Lynn C. Slaby,* prosecuting attorney, and *Donna J. Carr; Bertsch, Millican, Winslow & Pilawa Co., L.P.A.,* and *Dennis M. Pilawa,* for appellants.

MOYER, C.J. Defendants-appellants, CSB, David Miller, Sally Murphy, and John or Jane Doe, assert five propositions of law which present three issues. The first is whether CSB and its employees are immune from suit under the doctrines of absolute immunity or good faith qualified immunity. The second is whether CSB and its agents may rely on the public duty doctrine as a defense to plaintiff's claims that the agency failed to protect Tara Cook. The third issue is whether R.C. 2151.421(G) confers statutory immunity upon CSB and its officers.

## I
## Absolute Immunity

Defendants-appellants urge us to adopt the federal standards of absolute immunity accorded to departments of welfare or children services bureaus, arguing that this court has used federal immunity cases as precedent in deciding immunity issues in the past. See *Willitzer* v. *McCloud* (1983), 6 Ohio St. 3d 447, 6 OBR 489, 453 N.E. 2d 693.[2]

The United States Supreme Court has recognized two types of immunity defenses that may be asserted by public officers. For officials whose special functions are of constitutional status requiring complete protection from suit, the defense of absolute immunity is available. *Harlow* v. *Fitzgerald* (1982), 457 U.S. 800, 807. However, for executive officials in general, the cases generally hold that qualified immunity is the rule. In *Scheuer* v. *Rhodes* (1974), 416 U.S. 232, the court acknowledged that officials acting wholly in a discretionary capacity require greater protection than officials whose duties encompass less complex discretionary responsibilities. *Id.* at 246-247. To those officials with less complex discretionary responsibility, a "qualified immunity" is extended. The test for whether immunity attaches is based upon the nature and scope of the discretion and responsibilities of the public official whose acts are the basis of the alleged liability.

In support of their absolute immunity argument, defendants cite several federal district and circuit court cases.[3] The issues in these cases have been resolved by the United States Supreme Court in its recent opinion in *DeShaney* v. *Winnebago Cty. Dept. of Social Services* (1989), 489 U.S. ___, 103 L. Ed. 2d 249, 109 S. Ct. 998. In *DeShaney*, as in the other federal cases cited by defendants, the causes of action were brought under Section 1983, Title 42, U.S. Code. The plaintiffs generally alleged that they had been deprived of due process of law by a state agency, specifically departments of welfare or children services bureaus, in that the agency failed to provide children with adequate protection against abuse or neglect, or the agency exceeded its powers.

The United States Supreme Court held that nothing in the language of the Due Process Clause requires the state to protect the life, liberty, and property of its citizens against invasion by private actors. Where the state itself does not deprive the individual of these rights, the language of the Due Process Clause cannot be extended to impose an affirmative obligation on the state to ensure that those interests do not come to harm through other means. *DeShaney, supra,* at ___, 103 L. Ed. 2d at 258-259, 109 S.Ct. at 1003. The court observed, however, that:

"It may well be that, by voluntarily undertaking to protect [a child] * * *

---

[2] In *Willitzer,* this court recognized the concept of absolute immunity accorded to judges, counsel, parties, and witnesses for defamatory remarks made during and relevant to judicial proceedings. However, the court refused to extend that immunity to a physician conducting out-of-court physical examinations of workers' compensation claimants.

[3] The more recent of these include: *Meyers* v. *Contra Costa Cty. Dept. of Social Services* (C.A.9, 1987), 812 F. 2d 1154; *Mazor* v. *Shelton* (N.D. Cal. 1986), 637 F. Supp. 330; *Estate of Bailey* v. *York Cty.* (C.A.3, 1985), 768 F. 2d 503; *Jensen* v. *Conrad* (C.A.4, 1984), 747 F. 2d 185.

against a danger it concededly played no part in creating, the State acquired a duty under state tort law to provide him with adequate protection against that danger. See Restatement (Second) of Torts § 323 (1965) (one who undertakes to render services to another may in some circumstances be held liable for doing so in a negligent fashion); see generally W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on the Law of Torts § 56 (5th ed 1984) (discussing 'special relationships' which may give rise to affirmative duties to act under the common law of tort). * * *" *Id.* at ____, 103 L.Ed. 2d at 263, 109 S.Ct. at 1006.

Having considered *DeShaney* and the federal cases leading to its decision, we decline to adopt the doctrine of absolute immunity as applied in Section 1983 cases against a political subdivision claiming deprivation of due process of law. These cases are inapposite, as the cause of action filed by Brodie is based on negligence and misfeasance for which there was no absolute immunity under Ohio law at the time the cause accrued.

This case arose out of events which occurred during a period when the doctrine of absolute or sovereign immunity was no longer a defense for municipal corporations. See *Sawicki* v. *Ottawa Hills* (1988), 37 Ohio St. 3d 222, 225, 525 N.E. 2d 468, 473.

Furthermore, the defense of absolute immunity operates as a defense only where the public official's duties are of a highly discretionary nature. Here, the statutory scheme mandates some ministerial functions as well as discretionary judgments. This combination of responsibilities requires us to determine whether children services

bureau agents are public officials entitled to raise a defense of "qualified immunity."

## II
### Qualified Immunity

The doctrine of good faith qualified immunity as applied in Ohio is based on a three-part test: whether the official's action was taken within the scope of his or her authority; whether the actions consisted of duties involving the exercise of discretion and judgment; and whether the individual actions were made in good faith. See *C&D Partnership* v. *Gahanna* (1984), 15 Ohio St. 3d 359, 364, 15 OBR 480, 484, 474 N.E. 2d 303, 307; *Scot Lad Foods, Inc.* v. *Secy. of State* (1981), 66 Ohio St. 2d 1, 20 O.O. 3d 1, 418 N.E. 2d 1368. In *Scot Lad Foods,* the plaintiffs alleged that the Secretary of State failed to properly report the existence of a financing statement naming a certain identified party as a debtor, such failure being a breach of a ministerial duty mandated by law upon the Secretary of State. This court held that, under the common law,[4] a public officer may be sued in his or her individual capacity where the allegation of the complaint is that the officer misperformed a ministerial duty. *Id.* at 8, 22 O.O. 3d at 5, 418 N.E. 2d at 1373. At common law, a public official risks liability for negligently performed ministerial acts, regardless of good faith. See *Ross* v. *Consumers Power Co.* (1984), 420 Mich. 567, 632, 363 N.W. 2d 641, 667; Prosser & Keeton, Law of Torts (5 Ed. 1984) 1059-1060, Section 132.

The essence of plaintiff's complaint is that CSB and its employees

---

[4] In *Scot Lad Foods,* we noted that the common law had been changed by the enactment of R.C. 9.86 in 1980. However, that statute has no effect in this case, as it is inapplicable to county officers and employees. R.C. 9.85(A) and 109.36(A).

negligently failed to perform duties imposed on them by R.C. 2151.421.

R.C. 2151.421 governs the official reporting, investigation, and disposition of incidents of child abuse and/or neglect. The statute requires that whenever a suspected incident of child abuse or neglect is reported, an investigation must be commenced within twenty-four hours. The authority and responsibility to conduct such investigations and to submit the necessary reports are vested solely in the county department of human services or the children services board, in cooperation with law enforcement agencies. *Haag* v. *Cuyahoga Cty.* (N.D. Ohio 1985), 619 F. Supp. 262, 270-271, affirmed (C.A. 6, 1986), 798 F. 2d 1414; 1979 Ohio Atty. Gen. Ops. No. 79-067, at 2-222. This responsibility may not be delegated to another agency, whether that agency be public or private. *Haag, supra,* at 270-271.

The legislation manifests the clear intention of the General Assembly that these social service agencies shall protect children from abuse and neglect and eliminate the source of any such abuse.

All of the defendants' alleged acts or omissions were within the scope of their duties and authority as agents of the county. Therefore, defendants easily meet the first part of the test for the defense of qualified immunity. While the decision whether to pursue judicial intervention was discretionary with CSB and Murphy, the second part of the test is only partially satisfied since defendants' duties are of a controlled discretionary nature, not purely a matter of judgment. In *Harlow* v. *Fitzgerald, supra,* the United States Supreme Court held that government officials performing discretionary functions generally are shielded from liability "insofar as their conduct does not violate clearly established statu-

tory or constitutional rights of which a reasonable person would have known. * * *" *Id.* at 818. This "objective reasonableness" test is to be applied in determining whether the official acted in good faith. *Id.* at 817-819.

When considering a motion for summary judgment for the defense of qualified immunity, the judge may determine not only the currently applicable law, but whether the law was clearly established at the time the alleged act or omission occurred. "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. * * *" *Id.* at 818-819. See, also, *Anderson* v. *Creighton* (1987), 483 U.S. 635.

Although not applicable to county officers and employees, R.C. 9.86 provides a test for determining state employee liability when the alleged injury occurs while the employee is performing within the scope of employment, "* * * or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton and reckless manner."

We find this language to be a useful test for a finder of fact when determining whether the public official acted in good faith.

We hold that officers or agents of a county children services bureau are immune from civil liability for the exercise of discretionary functions unless a plaintiff challenging the public officer's good faith can show that the official acted in willful, reckless or wanton disregard of rights established under law.

Brodie's complaint alleged that CSB and its employees failed to perform the investigation and to make the reports mandated by R.C. 2151.421. Qualified immunity may not be asserted as a defense to an action

alleging the failure of a public official to perform ministerial acts.

Brodie's allegation was that the actions that were undertaken were performed in a grossly negligent manner and constituted reckless, willful, and wanton disregard for Tara's rights. This allegation is sufficient to challenge the employee's good faith under the doctrine of qualified immunity.

CSB, Miller, Murphy and Doe filed a motion to dismiss for failure to state a claim for which relief could be granted, and for summary judgment. The trial court granted the motion for summary judgment. No affidavits or other evidence were submitted to support this motion.

When a party files a motion for summary judgment pursuant to Civ. R. 56, it must appear that, construing the evidence in the light most favorable to the party opposing the motion, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion is made. Civ. R. 56(C); *Williams* v. *First United Church of Christ* (1974), 37 Ohio St. 2d 150, 66 O.O. 2d 311, 309 N.E. 2d 924.

Because plaintiff's complaint alleges common-law tort causes of action encompassing ministerial as well as discretionary duties, and defendants did not offer any evidence to show that the facts alleged could not provide a basis for such claim, summary judgment was inappropriate. The cause is remanded to the trial court to determine whether CSB and its agents acted in good faith in the performance of discretionary duties and whether they fulfilled their duty to perform statutorily required ministerial acts.

## III
### Public Duty Doctrine

The court of appeals also reversed that portion of the trial court's judgment which found that Ohio courts have refused to create a duty by a public agency to a specific individual. The court of appeals remanded the cause for consideration of our opinion in *Sawicki* v. *Ottawa Hills, supra.* In *Sawicki,* and later in *Williamson* v. *Pavlovich* (1989), 45 Ohio St. 3d 179, 543 N.E. 2d 1242, we stated that the doctrine of municipal immunity had been partially abolished by a series of cases decided in the early 1980s.[5] *Sawicki, supra,* at 225, 525 N.E. 2d at 473; *Williamson, supra,* at 185, 543 N.E. 2d at 1248. "When a duty which the law imposes upon a public official is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, is generally a public and not an individual injury." *Sawicki, supra,* at paragraph two of the syllabus. Paragraph four of the syllabus in *Sawicki* sets forth the test to determine if a special relationship or duty has arisen, in which case an exception to the public duty doctrine applies, permitting a claim against the municipality. Such claimant must establish the following elements: "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3)

---

[5] See, *e.g., Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26, 2 OBR 572, 442 N.E. 2d 749; *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31, 6 OBR 53, 451 N.E. 2d 228; *Strohofer* v. *Cincinnati* (1983), 6 Ohio St. 3d 118, 6 OBR 178, 451 N.E. 2d 787; *Longfellow* v. *Newark* (1985), 18 Ohio St. 3d 144, 18 OBR 203, 480 N.E. 2d 432.

some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking." *Id.* See, also, *Williamson, supra,* at 186, 543 N.E. 2d at 1249.

We hold that the public duty doctrine does not apply to the children services board in view of the specific and mandatory language of R.C. 2151.421 and the fact that the action required by the statute is not directed at or designed to protect the public at large, but intended to protect a specific child who is reported as abused or neglected. See, generally, Besharov, The Legal Aspects of Reporting Known and Suspected Child Abuse and Neglect (1978), 23 Vill. L. Rev. 458.

Where a public agency, such as a police or fire department, has a duty to serve and protect members of the public, liability for negligently failing to perform that duty can attach only if the four elements enumerated above have been satisfied. *Sawicki, supra; Williamson, supra; Cuffy* v. *New York* (1987), 69 N.Y. 2d 255, 513 N.Y. Supp. 2d 372, 505 N.E. 2d 937.

Here, the duty in the public agency is created by R.C. 2151.421. When CSB receives a report that a child is suspected of being abused or neglected, CSB has a duty under the statute to begin an investigation within twenty-four hours. The mandate is to take affirmative action on behalf of a specifically identified individual. This individual is a minor whom the General Assembly has determined to be a proper recipient of the specialized care and protection that only the state through its political subdivisions is able to provide in many instances.

We conclude that in view of the General Assembly's express intent that children services agencies take responsibility for investigating and proceeding with appropriate action to prevent further child abuse or neglect in specific, individual cases, the public duty doctrine does not apply as a defense against an allegation that a particular child did not receive the benefit of their action as a result of the agency's negligence. We hold that a children services board and its agents have a duty to investigate and report their findings as required by R.C. 2151.421 when a specific child is identified as abused or neglected, and the public duty doctrine may not be raised as a defense for agency failure to comply with such statutory requirements.

IV

We next consider former R.C. 2151.421(C), now found in R.C. 2151.421(G), which expressly granted immunity under the following circumstances: "* * * Anyone * * * participating in the making of the reports [required under this section], or anyone participating in a judicial proceeding resulting from the reports, shall be immune from any civil or criminal liability that might otherwise be incurred or imposed as a result of such actions. * * *"[6] 137 Ohio Laws, Part II, 2091, 2112.

The trial court found that this pro-

---

[6] R.C. Chapter 2744 limits tort liability of political subdivisions to certain specified circumstances. The chapter outlines the circumstances under which a political subdivision can and cannot be held liable for its acts or the acts of its employees. See R.C. 2744.02 and 2744.03. However, the effective date of R.C. Chapter 2744 was November 20, 1985, 141 Ohio Laws, Part I, 1699, 1734, which was well after the events in the case before us. Immunity from liability granted to political subdivisions pursuant to R.C. Chapter 2744 is therefore not available in the instant case.

vision conferred statutory immunity on Miller, Murphy and Doe. The court of appeals correctly reversed, concluding that the statute confers immunity on employees of CSB only when they participate in the making of reports or in judicial proceedings resulting from reports prepared pursuant to the statute. The basis of the action here is not the making of reports or participation in judicial proceedings arising from reports of child abuse or neglect but, instead, the agency's failure to report, initiate and proceed with judicial proceedings on behalf of Tara Cook. We hold that division (G) of R.C. 2151.421 does not confer immunity upon those who fail to carry out the mandate of the statute.

Here, according to plaintiff's complaint, Tara Cook had been reported as an abused and dependent child as early as 1981. CSB had gone as far as instituting judicial proceedings but dropped the case. In January 1983, CSB was again notified by school authorities that Tara was possibly being abused or neglected. CSB did not respond within twenty-four hours, but waited fourteen days before meeting with Tara, school officials and the police, and then another nine days before ordering a physical examination of Tara. There is no evidence of CSB's further contact with Tara after this date until Tara was taken to the hospital in a coma in June 1983.

· V

In summary, we conclude that the doctrine of absolute immunity urged by defendants as it is applied in cases involving Section 1983, Title 42, U.S. Code, is inapplicable to a case that raises common-law causes of action for negligence. Second, failure to perform ministerial acts by public officials is not conduct entitled to the protection of qualified immunity.

Third, we hold that the public duty doctrine does not apply as a defense for CSB or its agents, since the duties and responsibilities imposed on the agency pursuant to R.C. 2151.421 are designed to protect an identified individual child who has been reported to the agency as being abused or neglected. We also hold that because of the duties imposed by the statute, immunity conferred by division (G) of R.C. 2151.421 will not protect CSB officials from liability for failure to perform those duties.

Finally, because the motion for summary judgment filed by CSB and its employees was not supported by evidence to refute plaintiff's claim of gross negligence and reckless or wanton disregard of Tara Cook's rights, CSB has left the question of good faith in dispute with regard to the performance of any discretionary duties. Therefore, for purposes of the qualified immunity defense, the cause is remanded for a factual determination pursuant to the test set forth in this opinion.

For the reasons stated above, the trial court erred when it disposed of the allegations of Brodie's complaint upon summary judgment. The judgment of the court of appeals is affirmed as modified, and the cause is remanded.

*Judgment affirmed as modified, and cause remanded.*

SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.