OPINION
The present case is a wrongful death action filed by Appellant Robin Marshall, as Administrator of the Estate of Davon Perkins against the Montgomery County Children's Services Board ("CSB"), its director, Helen Jones, and the City of Dayton and its employee police officer. Davon was killed by his mother, Roxanne Perkins ("Roxanne"), on October 2, 1996. All defendants filed motions for summary judgment which were sustained by the trial court on June 10, 1999. Marshall appeals these decisions raising the following assignments of error:
 The trial court erred in sustaining the motion for summary judgment of Defendants Montgomery County Children's Services Board and Helen Jones.
 The trial court erred in sustaining the motion for summary judgment of Defendant City of Dayton.
Roxanne Perkins has a history of child abuse and neglect beginning in 1985 when she slapped her first child, three-month old Ebony. CSB opened its file on Roxanne after receiving a report regarding this incident. In 1987, CSB was advised that Roxanne had physically abused and abandoned her children, Ebony and Gary. Again in 1988, CSB received a report that she had abandoned these children. At this time, CSB placed both children with their paternal grandmother.
Thereafter, CSB investigated Roxanne in 1992 when a report was filed alleging that Roxanne had struck her third child, Doriane, repeatedly with a belt. Doriane was removed from the home and placed with a maternal aunt. While the case was still open, Roxanne gave birth to a fourth child, Darian, who was alcohol dependent. Due to this abuse, Darian was immediately placed with his paternal aunt, Robin Marshall. During this period of time, CSB instituted a program for Roxanne in order for her to regain custody of her children. While she completed the mandated parenting classes, she did not complete the required alcohol rehabilitation program. Ultimately, Doriane and Darian were permanently placed in the homes where they were residing.
In October of 1993, after all four of Roxanne's children were permanently placed outside of her home, CSB closed its file. At this time, CSB was aware that Roxanne was pregnant with her fifth child, but the policy was to close the file if all children were out of the home. CSB's theory was that the hospital would report any problems upon the birth of the child.
However, CSB did not receive any reports regarding Roxanne's fifth child, Davon, until October 24, 1994, when McLemore, the boy's father, reported that Roxanne was an alcoholic and was neglecting Davon. McLemore testified in a deposition that he made this referral because he planned to be away from the residence for awhile and due to Roxanne's history of abuse, he wanted CSB to check on Davon to ensure his safety. McLemore generally stayed at Roxanne's residence three to four days a week throughout most of Davon's life. He stated that he did not witness Roxanne abuse Davon at all while he was there, except one instance when she was spanking him on the buttocks with her hand. However, he stated that after being away from the residence for a few days, he would occasionally find bruises on Davon, and for a short period of time he had a limp. McLemore was not aware how any of these injuries occurred.
When CSB received the October 1994 report, Ed McNachtan was the caseworker assigned to investigate. He testified in a deposition that upon receiving the report, he read Roxanne's case file involving past instances of abuse. The day after the report was received, McNachtan attempted an unannounced home visit at Roxanne's residence, but no one was home. Subsequently, he made unannounced home visits on November 14, 1994, December 1, 1994, and January 10, 1995. He received no answer at the residence on any of these visits.
On April 19, 1995, McNachtan made a final unannounced home visit, finding Roxanne and Davon at home. He testified that she was reluctant to let him in, so he threatened to involve the police department. Roxanne allowed him into the apartment, which he found to be clean and well-furnished. The refrigerator was well-stocked and McNachtan found no signs of alcohol. Further, he testified that Davon appeared to be bonded with his mother, expressing no fear. Before McNachtan left the residence, he gave literature to Roxanne on substance abuse facilities to contact if she had a relapse. Additionally, he gave her his phone number to contact him if she needed any other assistance. After discussing the case with his supervisor, McNachtan closed the file, finding no justification for leaving it open.
On October 6, 1995, Roxanne initiated a fight against McLemore in the car while Davon was in the backseat. Roxanne pulled a knife on McLemore while he was driving and attempted to cut him. When McLemore pulled the car over, some bystanders contacted the police who came to the scene and arrested Roxanne. Officer Johnson, one of the officers who investigated at the scene, determined that Davon was not in any danger from the incident and therefore only charged Roxanne with domestic violence against McLemore. Custody of Davon was relinquished to McLemore following this incident. The next day, without Officer Johnson's knowledge, her supervisor added the charge of child endangerment after reviewing her report.
The police department and CSB had a policy at this time that whenever an arrest was made and the officer felt CSB should be involved, a report was placed in a specific location at the police department. Each day, someone from CSB would pick up these reports in order to investigate the situation. In the case of Roxanne's arrest on October 24, a report was not placed in this location alerting CSB to investigate.
Helen Jones became Director of CSB in December of 1995. She had no awareness of Roxanne's case because it was not open at the time she came to CSB.
Aside from the neglect report filed in October of 1994, CSB received no other reports regarding neglect or abuse of Davon. In September of 1996, McLemore left the residence and did not return for a few weeks. On October 2, 1996, Roxanne killed Davon with a blunt force to his head, crushing his skull.
 I
The trial court sustained summary judgment in favor of CSB and Helen Jones, finding immunity for their actions under Chapter 2744. This immunity statute provides a three-tiered analysis for determining whether or not a political subdivision or its employees have immunity. Armbruster v. West Unity Police Dept.
(1998), 127 Ohio App.3d 478, 483. First, R.C. 2744.02(A)(1) confers on all political subdivisions a blanket immunity which provides that they are not liable for injury, death or loss to persons or property that occurred in relation to the performance of a governmental or proprietary function. Second, R.C.2744.02(B) lists five exceptions to this blanket immunity. Appellant argues the following exception applies in the present case:
 (5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to persons or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Liability shall not be construed to exist under another section of the Revised Code merely because a responsibility is imposed upon a political subdivision or because of a general authorization that a political subdivision may sue and be sued.
Finally, if one of the exceptions to immunity is found to apply, R.C. 2744.03 lists several defenses or immunities to liability for both the political subdivision and its employees. However, the defenses in R.C. 2744.03 do not come into play unless liability attaches under one of the exceptions in R.C. 2744.02(B). Cater v.Cleveland (1998), 83 Ohio St.3d 24, 28. Therefore, we must first examine whether the above exception applies.
As stated above, R.C. 2744.02(B)(5) allows a political subdivision to be held liable for injury, death or loss to persons or property when another section of the Revised Code expressly imposes liability on the political subdivision. Further, Appellant relies on R.C. 2744.03(A)(6)(c) in its allegation that Helen Jones is not entitled to immunity. This subsection states:
 In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division, the employee is immune from liability unless one of the following applies:
* * *
 (c) Liability is expressly imposed upon the employee by a section of the Revised Code.
Appellant argues that R.C. 2151.421 expressly imposes liability on CSB and Helen Jones for failure to investigate allegations of abuse. We disagree.
The pertinent section of R.C. 2151.421 to which Appellant refers states as follows:
 (F)(1) Except as provided in section 2151.422 of the Revised Code, the public children services agency shall investigate, within twenty-four hours, each report of known or suspected child abuse or child neglect and of a known or suspected threat of child abuse or child neglect that is referred to it under this section to determine the circumstances surrounding the injuries, abuse, or neglect or the threat of injury, abuse, or neglect, the cause of the injuries, abuse, neglect, or threat, and the person or persons responsible. ***
Appellant argues this statute imposes a mandatory duty on CSB to investigate the circumstances surrounding the abuse, and to determine the cause. This mandatory duty, they urge, imposes express liability on CSB for their failure to perform this duty, thus excepting them from immunity under R.C. 2744.02(B)(5). In support of this contention, Appellant relies on the Supreme Court case of Brodie v. Summit County Children Services Board (1990),51 Ohio St.3d 112.
In Brodie, the Supreme Court did in fact hold that R.C.2151.421 imposes a duty upon CSB to investigate and report its findings as to specific allegations of abuse or neglect. Id. at 119. In addition, the Brodie Court found that violation of these duties was actionable, subject to immunity for discretionary acts performed in good faith and without willful, reckless or wanton disregard of rights. Id. at 117. However, one very important aspect of Brodie is that it pre-dated Chapter 2744 immunity statutes. We therefore must determine whether the Brodie analysis applies in light of the specific immunity statutes which are now in effect.
Our court discussed this issue in depth in Campbell v. Burton
(Aug. 27, 1999), Greene App. No. 99 CA 12, unreported. Campbell
involved allegations of abuse made by a student, Amber Campbell, to a teacher who conducted a peer mediation program at the junior high school. Campbell met with the teacher outside the context of the mediation program and made the allegations of sexual abuse involving an adult friend of her family. The teacher did not report the allegations of abuse to anyone. After Campbell advised her parents of the abuse, the family sought action against the teacher and the school system for failing to report the abuse as required under R.C. 2151.421(A)(1). The Campbells argued that the school system and the teacher were not immune from suit due to the exceptions found in R.C. 2744.02(B)(5) and 2744.03(A)(6)(c) respectively. Id.
In Campbell, we examined the Brodie analysis and several appellate cases since Brodie which addressed the application of Chapter 2744 immunity. Id. at 3-6. We found that several cases since Brodie have employed its analysis despite the adoption of Chapter 2744 immunity. See, Rich v. Erie Cty. Dept. of HumanResources (1995), 106 Ohio App.3d 88; Reed v. Perry Cty.Children's Serv. (June 29, 1993), Perry App. No. CA-429, unreported; Crago v. Lorain Cty. Commrs. (1990), 69 Ohio App.3d 24. The Crago and Reed courts both found that the exception to immunity in R.C. 2744.02(B)(5) and R.C. 2744.03(A)(6)(c) applied due to an express imposition of liability found in R.C. 2151.421.Crago, supra, at 27; Reed, supra, at p. 4. The Rich court simply ignored the application of the immunity statutes and strictly applied the Brodie analysis based on the concerns expressed by the Supreme Court to protect abused and neglected children from further harm. Rich, supra , at 93.
Conversely, the Third District disagreed that the Brodie
analysis should apply in light of the adoption of the immunity statutes. See, Lynch v. Auglaize Cty. Dept. of Human Serv. (Apr. 23, 1999), Auglaize App. No. 2-99-01, unreported. Specifically, the court found that since the claim arose after the effective date of Chapter 2744, the statute was controlling instead ofBrodie. Id. at p. 3. The Lynch court further disputed that R.C.2151.421 expressly imposed liability for purposes of the immunity exception found in R.C. 2744.02(B)(5). Although the court agreed that R.C. 2151.421 created a duty to investigate abuse and neglect allegations and provided for immunity for certain actions taken in the investigation or judicial proceedings, it did not agree that any part of the statute expressly imposed liability as is required under R.C. 2744.02(B)(5). Id.
In Campbell, we agreed with the Lynch court that R.C.2151.421 does not expressly impose liability in light of our previous opinions discussing express imposition of liability under R.C. 2744.02(B)(5) and R.C. 2744.03(A)(6)(c). Campbell, supra , at p. 6. These previous opinions established that in order for the immunity exceptions to apply, the statute itself must expressly impose liability for the defendant of the suit. Id., citingGlover v. Dayton Public Schools (Aug. 13, 1999), Montgomery App. No. 17601, unreported.
In examining the statute at issue in this case, we found no express imposition of liability. Id. The only portion of the statute even mentioning liability is subsection (G), which states:
 (G)(1)(a) Except as provided in division (H)(3) of this section, anyone or any hospital, institution, school, health department, or agency participating in the making of reports under division (A) of this section, anyone or any hospital, institution, school, health department, or agency participating in good faith in the making of reports under division (B) of this section, and anyone participating in good faith in a judicial proceeding resulting from the reports, shall be immune from any civil or criminal liability for injury, death, or loss to person or property that otherwise might be incurred or imposed as a result of the making of the reports or the participation in the judicial proceeding.
* * *
 (2) In any civil or criminal action or proceeding in which it is alleged and proved that participation in the making of a report under this section was not in good faith or participation in a judicial proceeding resulting from a report made under this section was not in good faith, the court shall award the prevailing party reasonable attorney's fees and costs and, if a civil action or proceeding is voluntarily dismissed, may award reasonable attorney's fees and costs to the party against whom the civil action or proceeding is brought.
The plain language of the statute grants good faith immunity to individuals involved in reporting abuse or judicial proceedings involving the abuse. However, it does not expressly impose liability on any individuals or political subdivisions as is required by R.C. 2744.02(B)(5) and R.C. 2744.03(A)(6)(c).Campbell, supra, at p. 7.
As a result of this analysis, we concluded in Campbell that the teacher and the school system were entitled to immunity since no exception applied under the statute. We still support that opinion today. R.C. 2151.421 does not expressly impose liability on CSB or its employees, and therefore the exceptions found in R.C. 2744.02(B)(5) and R.C. 2744.03(A)(6)(c) do not apply in this case. Both CSB and Helen Jones are therefore entitled to immunity under the statute.
Following our opinion in Campbell, we recognized that it did contradict several other appellate court opinions. On November 5, 1999, we certified for conflict the question of whether R.C.2151.421 expressly imposes liability for purposes of the immunity exceptions. At this time, the Supreme Court has not ruled on this question.
Based on the foregoing, Appellant's first assignment of error is hereby overruled. The trial court did not err in granting summary judgment in favor of CSB and Helen Jones.
II, Appellant's second assignment of error involves the same analysis as the first assignment. The trial court granted summary judgment in favor of the City of Dayton finding that they too were entitled to immunity under R.C. 2744.01(A) and no exception applied.
Again, Appellant argues that the exception found in R.C.2744.02(B)(5) applies because R.C. 2151.421 expressly imposes liability on the police department to report incidents of abuse to CSB. Although the statute does not designate police officers as mandatory reporters of abuse under R.C. 2151.421(A)(1)(b), Appellant relies on a separate section which states as follows:
 (D)(1) Upon the receipt of a report concerning the possible abuse or neglect of a child or the possible threat of abuse or neglect of a child, the municipal or county peace officer who receives the report shall refer the report to the appropriate public children services agency.
Appellants rely on use of the word "shall" in their contention that the statute imposes a mandatory duty upon police officers to report abuse and neglect. In reviewing the language of this subsection however, the duty to report only arises when the police receive a report of abuse or neglect. In the present case, the police received a report of adult on adult domestic violence, and were not aware there was a child present until they arrived at the scene. Therefore, it is not even clear that the police had a duty to report to CSB under the statute.
Even if the statute does create a duty for the police to report potential abuse or neglect in this case, the statute does not expressly impose liability on the officer or the police department for a failure to report. As discussed in the first assignment of error, R.C. 2151.421 does not expressly impose liability on any individual or political subdivision as is required under the immunity exception in R.C. 2744.02(B)(5). Consequently, the police department is entitled to immunity under R.C. 2744.01(A)(1).
Based on the foregoing, Appellant's second assignment of error is overruled. As both assignments of error have been overruled, judgment of the trial court is hereby Affirmed.
 _______________________ BROGAN, J.
GRADY, P.J., and FAIN, J., concur.