¶ 78 Although I concur with the majority's resolution of the cross-appeal, I respectfully dissent from the disposition of the first assignment of error in the appeal: I believe that R.C. 2305.25 granted the hospital immunity from all consequences of the peer review proceedings that took place in this case.
¶ 79 UH was entitled to judgment notwithstanding the verdict because it clearly established immunity under R.C. 2305.25(A). The statute provides that:
 ¶ 80 No hospital, no state or local society, and no individual who is a member or employee of any of the following committees shall be liable in damages to any person for any acts, omissions, decisions, or other conduct within the scope of the functions of the committee:
* * *
 ¶ 81 (D) A peer review committee, professional standards review committee
¶ 82 The immunity provided in R.C. 2305.25 is qualified in nature. See Browning v. Burt (1993), 66 Ohio St.3d 544. As applied to other cases involving an assertion of qualified immunity, this means that the immunity will be applied when (1) the official's action was taken within the scope of his or her authority; (2) the actions consisted of duties involving the exercise of discretion and judgment; and (3) the individual actions were made in good faith. Brodie v. Summit Cty.Childrens' Services Bd. (1990), 51 Ohio St.3d 112, 116.
¶ 83 It is undisputed that a peer review process did occur. Moreover, Ahmed does not claim that UH failed to meet the first two parts of this test. The sole question was whether UH's actions were made in good faith.
¶ 84 Ahmed tried to show UH acted in bad faith because it only revoked his privileges at one hospital within the UH health system, but permitted him to practice in two other hospitals within that same system. Ahmed claimed that UH really intended to force him out of UH Geauga for the purpose of putting its own physicians into the practice he would leave.
¶ 85 Regardless whether Ahmed continued to practice medicine at other UH hospitals, there can be no doubt that UH conducted the peer review process in good faith. Ahmed's argument that the hospital acted inconsistently in suspending his privileges at one hospital, but retaining his privileges at two other hospitals, misses the point. An adhoc committee made up of members of the hospital's OB/GYN division found cause to have Ahmed referred to the Executive Medical Committee. This is the classic form of peer review, where one is judged by persons within one's profession. Those who belonged to the same department as Ahmed believed that his actions required some form of discipline. Although other proceedings within the peer review process came to different conclusions, it is worth mentioning that the hearing officer who sided with Ahmed nonetheless recommended that his reinstatement to privileges be done on the condition that Ahmed be monitored for six months, acquire a partner and provide written assurance that his patients would have sufficient back-up care in the event he was absent. This finding alone shows that UH instituted the peer review process in good faith.
¶ 86 Ahmed's only other claim of bad faith is that UH instituted a "parallel track" review process. Accepting this as true, it provides him with no claim of bad faith since the court specifically found that Ahmed received all of the process that had been due to him. In any event, in a similar context, we have held that only substantial noncompliance can be considered for a breach of contract claim relating to failure to follow hospital by-laws. See Kelkar v. Comm. Hosp. ofBedford (Feb. 11, 1982), Cuyahoga App. No. 43641, unreported. Since Ahmed received the process due to him, any breach of the by-laws could only be considered unsubstantial, and therefore would not rise to the level of bad faith sufficient to negate the peer review immunity set forth in R.C. 2305.25.