YATES et al., Individually and as Parents and Legal
Guardians of Ashley Yates, a Minor, Appellants,

v.

MANSFIELD BOARD OF EDUCATION, Appellee.

[Cite as *Yates v. Mansfield Bd. of Edn.,* 150 Ohio App.3d 241, 2002-Ohio-6311.]

Court of Appeals of Ohio,
Fifth District, Richland County.

No. 02 CA 27.

Decided Nov. 20, 2002.

Robert J. Vecchio Co., L.P.A., and Robert J. Vecchio, for appellants.

Lutz & Oxley, Fred M. Oxley and Erin N. Cahill, for appellee.

WISE, Judge.

{¶ 1}  Appellants Tony and Sandra Yates, individually and as parents and legal guardian of Ashley Yates, appeal from the judgment of the Richland County Court that granted summary judgment on behalf of the Mansfield Board of Education ("board").  The following facts give rise to this appeal.

{¶ 2}  At the time of the incident giving rise to this lawsuit, fifteen-year-old Ashley Yates was a freshman attending Mansfield Senior High School at the Cline Avenue Campus.  Donald Coots Jr. was a teacher and boys' basketball coach.  On Saturday, February 5, 2000, the boys' basketball team traveled to Findlay for a game.  Ashley traveled with the team to Findlay in order to help record game statistics.  Following the game, Ashley returned to the high school, with the team, and waited for her ride to arrive.  While she was waiting, Coots asked Ashley to help him put basketballs away upstairs in the equipment room.  The incident of sexual misconduct between Ashley and Coots occurred while inside the equipment room.

{¶ 3}  Later than afternoon, Ashley told her best friend, Megan Bradshaw, what had occurred with Coots.  Upon returning to school the following week, Megan informed the school guidance counselor, Toni Fletcher, what Ashley had told her about the incident.  Ashley was summoned to the office and she verified to Fletcher and Principal Michael Dick that the incident had occurred.  Dick immediately telephoned the police.  Thereafter, Coots resigned from his teaching position.  Following a police investigation, Coots was charged with and subsequently found guilty of sexually abusing Ashley.  Due to other students taunting her about this incident, Ashley eventually left Mansfield Senior High School and enrolled in St. Peter's High School.

{¶ 4}  In 1997, prior to the incident with Ashley, Coots was involved in sexual activity, at the high school, with another student named Amanda.  Upon learning of these allegations, Dick conducted his own investigation, concluded that Amanda was lying, and expelled her from school.  This incident was never reported to the authorities as required by R.C. 2151.421.

{¶ 5} As a result of Coots's sexual abuse of their daughter, the Yateses filed a complaint on October 27, 2000, against Coots and the board. The complaint alleges four separate causes of action. First, the Yateses allege that the board is vicariously liable for Coots's acts because he was in the course and scope of his employment when they were committed. Second, the Yateses allege that the board, being aware of prior incidents of sexual assault and/or harassment by Coots, negligently supervised his conduct with female students. Third, the Yateses allege that the board failed to comply with R.C. 2151.421. Finally, the Yateses allege that the board negligently or intentionally permitted Coots to encounter and engage Ashley in a sexual act.

{¶ 6} Following the completion of discovery, the board filed a motion for summary judgment on January 28, 2002. In its motion, the board argued that it was entitled to sovereign immunity. The Yateses opposed the board's motion and argued that the board is liable under two exceptions to the sovereign immunity statute. The trial court granted the board's motion for summary judgment on February 28, 2002. In granting the board's motion, the trial court concluded that the board was not vicariously liable because the acts of Coots were performed outside the course and scope of Coots's employment. Although the trial court found that there were genuine issues of material fact regarding whether the board negligently supervised Coots, this claim was barred because the board was entitled to sovereign immunity.

{¶ 7} The Yateses timely appealed from the trial court's judgment and set forth the following assignments of error for our consideration:

{¶ 8} "I. The trial court erred as a matter of law in finding that appellants' claim did not qualify under [the] R.C. § 2744.02(B)(5) exception to immunity.

{¶ 9} "II. The trial court erred as a matter of law by finding that appellants' claim did not qualify under [the] R.C. § 2744.02(B)(4) exception to immunity."

## Summary Judgment Standard

{¶ 10} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 30 OBR 78, 506 N.E.2d 212. Therefore, we must refer to Civ.R. 56 which provides:

{¶ 11} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion

and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

{¶ 12} Pursuant to the above rule, a trial court may not enter summary judgment if it appears that a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the nonmoving party has no evidence to prove its case. The moving party must specifically point to some evidence that demonstrates that the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the nonmoving party to set forth specific facts demonstrating that there is a genuine issue of material fact for trial. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.

### Sovereign Immunity

{¶ 13} The Yateses' appeal focuses on the issue of sovereign immunity and whether the trial court properly found it applicable in the case sub judice. As a threshold matter, schools are political subdivisions as defined in R.C. 2744.01(F). The operation of a school is a governmental function as set forth in R.C. 2744.01(C)(1) and (2). In *Armbruster v. W. Unity Police Dept.* (1998), 127 Ohio App.3d 478, 483, 713 N.E.2d 436, the Sixth District Court of Appeals set forth a three-tier analysis for determining whether a political subdivision is entitled to immunity.

{¶ 14} The first tier, pursuant to R.C. 2744.02(A)(1), sets forth the general grant of immunity for political subdivisions and provides:

{¶ 15} "(A)(1) * * * [A] political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

{¶ 16} The second tier sets forth five exceptions to the general grant of immunity. In order to overcome the general grant of immunity, a plaintiff must fit within one of the five exceptions to immunity contained in R.C. 2744.02(B). The pertinent exceptions for purposes of this appeal are as follows:

{¶ 17} "(B) Subject to sections 2744.03 and 2744.04 of the Revised Code, a political subdivision is liable in damages in a civil action * * * as follows:

{¶ 18} "* * *

{¶ 19} "(4) * * * [P]olitical subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function * * *.

{¶ 20} "(5) * * * [A] political subdivision is liable for injury, death, or loss to person or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code."

{¶ 21} The analysis under the third tier is to determine whether the school district or employee is entitled to any of the defenses to liability contained in R.C. 2744.03. It is within this analytical framework that we address the Yateses' assignments of error.

I

{¶ 22} In their first assignment of error, the Yateses contend that the trial court erred in concluding that their claim did not qualify under the R.C. 2744.02(B)(5) exception to sovereign immunity. We disagree.

{¶ 23} In its judgment entry, the trial court acknowledged that failure to report known or suspected child abuse, pursuant to R.C. 2151.421,[1] is a criminal offense. Judgment Entry, Feb. 28, 2002, at 4. Therefore, under R.C. 2744.02(B)(5), sovereign immunity does not apply because criminal liability is liability imposed by statute. Id. This finding by the trial court is in accord with the recent Ohio Supreme Court decision in *Campbell v. Burton* (2001), 92 Ohio St.3d 336, 750 N.E.2d 539, wherein the court held:

{¶ 24} "1. Within the meaning of R.C. 2744.02(B)(5) and 2744.03(A)(6)(c), R.C. 2151.421 expressly imposes liability for failure to perform the duty to report known or suspected child abuse.

{¶ 25} "2. Pursuant to R.C. 2744.02(B)(5), a political subdivision may be held liable for failure to perform a duty expressly imposed by R.C. 2151.421." Id. at paragraphs one and two of the syllabus.

{¶ 26} However, the trial court further found that the problem with applying the above law to the case sub judice is that the abuse that was not reported

---

1. "No person described in division (A)(1)(b) of this section who is acting in an official or professional capacity and knows or suspects that a child under eighteen years of age or a mentally retarded, developmentally disabled, or physically impaired child under twenty-one years of age has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child, shall fail to immediately report that knowledge or suspicion to the public children services agency or a municipal or county peace officer * * *."

involved a different child several years prior to the incident with Ashley. Id. at 5. Dick promptly reported the abuse of Ashley to the police. Id. Thus, the trial court concluded:

{¶ 27} "The liability imposed is criminal liability for failure to report the [Amanda] * * * incident, not failure to report the plaintiff Yates incident. There is no statutory liability imposed for the Yates incident. The court consequently concludes that the Board is entitled to sovereign immunity because neither of the exceptions cited by the plaintiffs appl[ies]." Id. at 5.

{¶ 28} On appeal, the Yateses urge us to adopt their argument that the board's failure to report the prior incident with Amanda, which occurred several years prior to the sexual misconduct with their daughter, precludes the board's claim of sovereign immunity in the present case. The Yateses interpret R.C. 2151.421 so as to provide protection to a child who has suffered injury or may have avoided injury if the statutory reporting requirement had been followed. Thus, the board's breach of its duty to report the prior allegation of sexual misconduct meets the exception of R.C. 2744.02(B)(5) because Ashley, as a student at Mansfield Senior High School, falls within the class of beneficiaries that R.C. 2151.421(A) was designed to protect.

{¶ 29} In support of their argument that Ashley was a member of the class of beneficiaries to be protected by R.C. 2151.421(A), the Yateses cite *Hocking Valley Ry. Co. v. Phillips* (1910), 81 Ohio St. 453, 91 N.E. 118. In *Hocking,* the Ohio Supreme Court held:

{¶ 30} "In an action for neglect of duty, it is not enough for the plaintiff to show that the defendant neglected a duty imposed by statute, and that he would not have been injured if the duty had been performed, but, to entitle him to recover, he must further show that such duty was imposed for his benefit, or was one which the defendant owed to him for his protection and security, from the particular loss or injury to which he complains." Id. at 462, 91 N.E. 118.

{¶ 31} Based upon the above language, the Yateses maintain that R.C. 2151.421 was enacted to protect children who have been abused and children who are foreseeable victims of abuse. Thus, the board's prior failure to report Coots's sexual misconduct with Amanda was also a breach of the board's duty owed to their daughter.

{¶ 32} In response to this argument, the board contends that Ohio courts have held that a duty to report knowledge or suspicion of child abuse under R.C. 2151.421 is owed only to the individual minor. Thus, the board concludes that the duty to report the incident of misconduct between Amanda and Coots was that owed only to Amanda. In support of this argument, the board cites *Curran v. Walsh Jesuit High School* (1995), 99 Ohio App.3d 696, 651 N.E.2d 1028, discre-

tionary appeal not allowed (1995), 72 Ohio St.3d 1529, 649 N.E.2d 839, and *Hite v. Brown* (1995), 100 Ohio App.3d 606, 654 N.E.2d 452, discretionary appeal not allowed (1995), 73 Ohio St.3d 1414, 651 N.E.2d 1311.

{¶ 33} In *Curran,* Michael Curran filed a complaint against Walsh Jesuit High School, the Detroit Province of the Catholic Diocese of Cleveland, and Howard McDonough, asserting claims for sexual battery, breach of contract, clergy malpractice, negligent hiring, retention and supervision, and respondeat superior. Id. at 697–698, 651 N.E.2d 1028. In his complaint, Curran claimed that during the 1973–1974 school year he engaged in a course of sexual activity with Howard McDonough. Id. at 697, 651 N.E.2d 1028. As a result of the publicity generated from the filing of the complaint, Mark Cabaniss, another former student at Walsh Jesuit High School, contacted Curran's attorney and signed an affidavit stating that he had been sexually abused by McDonough during the 1972–1973 school year. Id. at 698, 651 N.E.2d 1028.

{¶ 34} Following discovery, Curran filed an amended complaint in which he named only Walsh Jesuit High School and the Detroit Province. Walsh Jesuit High School and the Detroit Province filed a joint motion to dismiss and/or for summary judgment. The trial court granted the motion. Curran timely appealed to the Ninth District Court of Appeals. The court of appeals interpreted the version of the statute in effect at the time of the alleged events and concluded that the failure to perform a statutory duty imposed by R.C. 2151.421 is actionable. Id. at 699, 651 N.E.2d 1028. The court further concluded:

{¶ 35} " * * *[T]he duty imposed by R.C. 2151.421 is intended for the protection of individuals rather than for the public in general. In *Brodie* [*v. Summit Cty. Children Serv. Bd.* (1990), 51 Ohio St.3d 112[2]], 119, 554 N.E.2d [1301] at 1308, the Supreme Court of Ohio addressed the issue stating, '[T]he statute is not directed at or designed to protect the public at large, but intended to protect a specific child who is reported as abused or neglected.' " Id., 99 Ohio App.3d at 699, 651 N.E.2d 1028.

{¶ 36} Thus, because the statute is intended to protect the specific child who is reported abused or neglected, the court of appeals concluded that Curran did not have standing to bring a civil claim for Walsh Jesuit High School's alleged breach of a statutory duty mandated by R.C. 2151.421 as any reporting duty was owed to Cabaniss rather than Curran. Id., 99 Ohio App.3d at 699–700, 651 N.E.2d 1028.

---

2. {¶ a} In *Brodie,* the Ohio Supreme Court held:
{¶ b} "[T]he public duty doctrine does not apply to the children services board in view of the specific and mandatory language of R.C. 2151.421 and the fact that the action required by the statute is not directed at or designated to protect the public at large, but intended to protect a specific child who is reported as abused or neglected." Id. at 119, 554 N.E.2d 1301.

{¶ 37} The Yateses attempt to distinguish the *Curran* case on the basis that it interpreted a prior version of R.C. 2151.421. Prior to 1989, the statute imposed a duty to report "a child [who] has suffered any wound, injury, disability, or condition." In 1989, the General Assembly amended the statute and expanded the reporting requirement to include "a child [who] has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition." The Yateses maintain that this change in language creates a duty to both current and potential future victims.

{¶ 38} We disagree with this argument and instead conclude that the identification of the person to whom a duty is owed is "a child." This duty is the same in both the pre–1989 version of the statute and the post–1989 version of the statute. Further, both versions of the statute require a report to be made, and the contents of this report require personal information regarding a specific child. Thus, we conclude that R.C. 2151.421 creates a duty only to a specific child.

{¶ 39} The board also relies on *Hite.* One of the issues raised on appeal in *Hite* concerned whether a psychologist who has a duty to report knowledge or suspicions of child abuse owes that duty to persons outside the scope of the psychologist/patient relationship. Id., 100 Ohio App.3d at 616, 654 N.E.2d 452. In concluding that a psychologist has no duty outside the psychologist/patient relationship, the court of appeals cited *Brodie* and concluded that R.C. 2151.421 is intended to protect a specific child and not the public at large. Id.

{¶ 40} In response to the Ohio cases cited by the board, the Yateses rely upon *Perry v. S.N.* (Tex.1998), 973 S.W.2d 301. We find *Perry* distinguishable from the case sub judice in that the Texas statute imposes a statutory duty to report on any person. The Texas statute provides that any person who "has cause to believe that a child's physical or mental health or welfare has been or may be adversely affected by abuse" to file a report with the police or the Department of Protective and Regulatory Services. In addition to imposing a duty on far more individuals, the Texas statute concerns not only children who have been abused or face a threat of suffering abuse, but also children who may be adversely affected by abuse. Thus, the Texas statute is also much broader in that it does not require that the reported child be the victim or suspected victim of abuse, as Ohio does, but only that the child be adversely affected by abuse.

{¶ 41} We also conclude that the trial court's decision is not contrary to public policy which supports a child's right to be secure from sexual abuse by public employees. The Yateses specifically contend that affording schools immunity under the facts of this case would reward the deliberate violation of a statutory duty and allow the board to exercise discretion with respect to knowledge of sexual abuse allegations. A review of R.C. 2151.421 clearly indicates that school officials have no discretion regarding whether to report alleged abuse. In fact,

had the school officials failed to report the sexual misconduct between Coots and Ashley, they would have been subject to criminal penalties and the board would have been liable for injuries proximately caused by the failure pursuant to *Campbell.*

{¶ 42} The Yateses maintain that *Marshall v. Montgomery Cty. Children Serv. Bd.* (2001), 92 Ohio St.3d 348, 750 N.E.2d 549, supports this conclusion because the court held in *Marshall* that a failure to investigate abuse does not fall into the exception to immunity contained in R.C. 2744.02(B)(5). Therefore, immunity may provide discretion to social services agencies regarding investigation of allegations of abuse. We disagree with the Yateses' argument because Ohio law only provides immunity as it pertains to the investigation of allegations of abuse. However, Ohio law does not provide immunity for the reporting of abuse and failure to report abuse will result in criminal sanctions.

{¶ 43} Accordingly, we conclude that the trial court properly granted the board's motion for summary judgment as the duty to report the sexual misconduct between Coots and Ashley, according to R.C. 2151.421, was owed only to Ashley. Thus, the failure to report the prior incident of sexual misconduct between Coots and Amanda did not qualify as an exception to immunity under R.C. 2744.02(B)(5).

{¶ 44} The Yateses' first assignment of error is overruled.

II

{¶ 45} The Yateses contend, in their second assignment of error, that the trial court erred as a matter of law by finding that their claim did not preclude immunity pursuant to R.C. 2744.02(B)(4). We disagree.

{¶ 46} As noted above, R.C. 2744.02(B)(4) precludes immunity for the "negligence of their employees that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function." We have previously held that Section (B)(4) applies only to the maintenance of governmental property and not the decision-making that may take place on such property. See *Hubbard v. Canton City Schools* (Mar. 30, 2001), Stark App. No. 2000CA00313, at 2, 2001 WL 326869.

{¶ 47} Therefore, we conclude that the trial court properly granted summary judgment as R.C. 2744.02(B)(4), since the injury suffered by Ashley was not due to physical defects within or on the grounds of Mansfield Senior High School.

{¶ 48} The Yateses' second assignment of error is overruled.

{¶ 49} For the foregoing reasons, the judgment of the Court of Common Pleas, Richland County, Ohio, is hereby affirmed.

Judgment affirmed.

GWIN, P.J., concurs.

BOGGINS, J., dissents.

BOGGINS, Judge, dissenting.

{¶ 50} I respectfully dissent from the majority opinion.

{¶ 51} In its judgment entry, the trial court acknowledged that failure to report known or suspected child abuse, pursuant to R.C. 2151.421, is a criminal offense. Judgment Entry, Feb. 28, 2002, at 4. Therefore, under R.C. 2744.02(B)(5), sovereign immunity does not apply because criminal liability is liability imposed by statute.

{¶ 52} The trial court found that the problem with applying the above law to the case sub judice is that the abuse that was not reported involved a different child several years prior to the incident with Ashley. Id. at 5. Dick promptly reported the abuse of Ashley to the police. Id. Thus, the trial court concluded:

{¶ 53} "The liability imposed is criminal liability for failure to report the [Amanda] * * * incident, not failure to report the plaintiff Yates incident. There is no statutory liability imposed for the Yates incident. The court consequently concludes that the Board is entitled to sovereign immunity because neither of the exceptions cited by the plaintiffs apply." Id. at 5.

{¶ 54} I must disagree with this conclusion.

{¶ 55} R.C. 2744.03(A)(2) provides immunity for conduct required by law of its employees but provides an exception if such conduct was negligent.

{¶ 56} Also, such Section (A)(6)(c) provides that immunity is not a defense if liability is expressly imposed upon the employee by a section of the Revised Code.

{¶ 57} R.C. 2151.421(A)(1)(b) requires the reporting by a school authority of a claim of sexual abuse not only suffered by a child under 18 but also requires notification if a child *faces a threat of suffering.*

{¶ 58} *Campbell v. Burton* (2001), 92 Ohio St.3d 336, 750 N.E.2d 539, contains the following West headnotes:

{¶ 59} "Concern of the General Assembly in enacting the statute mandating the reporting of known or suspected child abuse was not the protection of political subdivisions or their employees from claims for damages, but the protection of children from abuse and neglect." (West headnote 1.)

{¶ 60} "Statute mandating the reporting of known or suspected child abuse, through its criminal penalty for failure to report, 'expressly imposes liability,' within meaning of Political Subdivision Tort Liability Act provisions creating exceptions from sovereign immunity of political subdivisions and their employees if the Revised Code expressly imposes liability. R.C. §§ 2151.99, 2151.421(A)(1)(a, b), 2744.02(B)(5), 2744.03(A)(6)(c)." (West headnote 2.)

{¶ 61} " 'Liability,' within meaning of Political Subdivision Tort Liability Act provisions creating exceptions from sovereign immunity of political subdivisions and their employees if the Revised Code expressly imposes liability, refers not only to civil liability, but also to criminal liability. R.C. §§ 2744.02(B)(5), 2744.03(A)(6)(c)." (West headnote 3.)

{¶ 62} "* * *

{¶ 63} "A political subdivision may be held liable for its employee's failure to perform a duty expressly imposed by the statute mandating the reporting of known or suspected child abuse. R.C. §§ 2151.421, 2744.02(B)(5)." (West headnote 6.)

{¶ 64} The Supreme Court stated as follows in *Campbell:*

{¶ 65} "R.C. 2151.421(A)(1)(b) lists 'school teacher; school employee; school authority' and other professionals as persons required to report any known or suspected abuse or neglect. In *Brodie v. Summit Cty. Children Serv. Bd.* (1990), 51 Ohio St.3d 112, 119, 554 N.E.2d 1301, 1308, we found that the General Assembly enacted R.C. 2151.421 to safeguard children from abuse. In many instances, only the state and its political subdivisions can protect children from abuse. *Id.* Additionally, we found that children services agencies must protect children from abuse *and eliminate the source of any such abuse. Id.* Thus, it is clear that the concern of the General Assembly in enacting R.C. 2151.421 was not political subdivisions or their employees, but *the protection of children* from abuse and neglect.

{¶ 66} "* * *

{¶ 67} "In R.C. 2744.02(B)(5) and 2744.03(A)(6)(c), the term 'liability' is not modified by the words 'civil' or 'criminal.' Therefore, by its very definition, 'liability' refers to either a criminal or civil penalty. In reviewing these provisions of the statute 'it is the duty of this court to give effect to the words used, not to delete words used or insert words not used.' *Cleveland Elec. Illum. Co. v. Cleveland* (1988), 37 Ohio St.3d 50, 524 N.E.2d 441, paragraph three of the syllabus, citing *Columbus–Suburban Coach Lines v. Pub. Util. Comm.* (1969), 20 Ohio St.2d 125, 127, 49 O.O.2d 445, 446, 254 N.E.2d 8, 9.

{¶ 68} "* * *

{¶ 69} "The General Assembly enacted R.C. 2151.421 to provide special *protection to children* from abuse and neglect. In order to achieve this goal, the General Assembly had to encourage those with special relationships with children, such as doctors and teachers, to report known or suspected child abuse." (Emphasis added and footnote omitted.) Id., 92 Ohio St.3d at 341–342, 750 N.E.2d 539.

{¶ 70} The question of failure to report in *Brodie* dealt with a specific child and is different from that raised in the case sub judice.

{¶ 71} The issue before us is whether the failure to report the prior alleged incident as to Amanda to the authorities trained to conduct an appropriate investigation resulted in negligent retention of the teacher in question and thereby constituted a threat to Ashley Yates.

{¶ 72} As stated in *Campbell v. Burton,* the General Assembly by enacting R.C. 2151.421 *intended to protect children, not a child.*

{¶ 73} I find therefore that a material disputed fact subject to jury determination was presented. I do not, however, determine that sufficient facts necessarily existed as to Amanda to require termination after an appropriate investigation as such is also within the province of the jury.

{¶ 74} I therefore would sustain both the first and second assignments of error, reverse the trial court's judgment, and remand this cause for further proceedings consistent herewith.